868 F.2d 146
 57 USLW 2610, 20 Collier Bankr.Cas.2d 1292,
19 Bankr.Ct.Dec. 391, Bankr. L. Rep. P 72,835
 In the Matter of: CTS TRUSS, INC., Debtor.
Kenneth D. HOLT, Trustee for the Bankruptcy Estate of CTS
Truss, Inc., Appellant,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, Appellee.
 No. 88-1036.
 United States Court of Appeals,
Fifth Circuit.
 March 10, 1989.
 
 Robert R. Truitt, Jr., Midland, Tex., for appellant.
 Christine M. Anderson, F.D.I.C., Midland, Tex., for appellee.
 Appeal from the United States District Court for the Western District of Texas.
 Opinion On Reconsideration
 (Opinion Nov. 4, 1988, 5th Cir.1988, 859 F.2d 357)
 Before REAVLEY, JOHNSON and JONES, Circuit Judges.
 EDITH H. JONES, Circuit Judge:
 
 
 1
 This panel has reconsidered the rationale underlying part I of our opinion issued previously in this case and reported at 859 F.2d 357. The mandate has not yet been issued. Without changing the result in the case, we herewith delete part of the discussion formerly contained in part I of the opinion and reissue the opinion as follows:
 
 
 2
 CTS Truss, Inc. (CTS), represented by its bankruptcy trustee, appeals a decision of the district court which denied its request for equitable subordination of a claim of the Federal Deposit Insurance Corporation (FDIC) under 11 U.S.C. Sec. 510(c). Because the district court correctly affirmed the decision of the bankruptcy court to deny equitable subordination, we affirm its judgment.
 
 BACKGROUND
 
 3
 CTS sought relief under Chapter 11 of the Bankruptcy Code on July 2, 1985. During the course of those proceedings, which eventually became a Chapter 7 liquidation, the FDIC filed a proof of claim in the amount of $324,515.36 secured by the Debtor's equipment, inventory, accounts receivable and two vehicles. CTS objected to the FDIC's proof of claim, arguing that this claim should be equitably subordinated to the claims of all other creditors pursuant to 11 U.S.C. Sec. 510(c). CTS alleged that equitable subordination was appropriate because the FDIC's predecessor in interest, The First National Bank of Midland, Texas ("Bank") had engaged in wrongful conduct toward the debtor. Allegedly, an officer of the Bank promised CTS in June, 1983 to make additional loans to the company to finance a proposed expansion of its business. Although no written loan agreement ever memorialized this commitment, CTS executed two promissory notes, for $75,000 each, on June 23. CTS alleged that it had relied on the Bank's promises to its detriment, by purchasing supplies and inventory and hiring additional employees. The Bank never funded the promissory notes or extended additional financing.[1] The alleged misrepresentations by the Bank caused CTS to overextend itself financially and ultimately resulted in its bankruptcy filing.
 
 
 4
 In October 1983 the Bank was declared insolvent and taken over by the FDIC in its capacity as Receiver. In its corporate capacity, the FDIC subsequently purchased from the Receiver certain assets formerly held by the Bank, including the notes and security documents which form the basis of the FDIC's proof of claim. That proof of claim was founded on CTS's unpaid debts to the Bank and not on the June 1983 notes. CTS has alleged no wrongdoing by the FDIC.
 
 
 5
 The bankruptcy court found that the FDIC held valid, perfected liens on all of its collateral. The bankruptcy court approved the FDIC's claim and as a matter of law held that it could not be equitably subordinated because the FDIC was a transferee innocent of any misconduct against CTS. Because of this legal conclusion, the court did not make findings of fact with respect to the Bank's conduct and did not reach the issue whether the Bank's alleged conduct satisfied the criteria for equitable subordination. CTS unsuccessfully appealed to the district court.
 
 DISCUSSION
 
 6
 On appeal, CTS argues that the Bankruptcy Code's equitable subordination provision, 11 U.S.C. Sec. 510, applies to claims of the FDIC in the bankruptcy context, notwithstanding the two venerable doctrines of D'Oench[2] and the FDIC shield statute, 12 U.S.C. Sec. 1823(e). The fulcrum of the argument is an assumption that the FDIC's secured claim can be equitably subordinated to the claims of other unsecured or secured creditors of CTS. If equitable subordination is in its own terms inapplicable, then CTS's proffered "conflict" between Sec. 510 and Sec. 1823(e) is non-existent.
 
 
 7
 We conclude that equitable subordination is unavailable in this case. Even if the alleged misconduct of the Bank could be imputed to the FDIC, this case does not fall within any of the classic patterns of conduct that have led the courts to fashion the extraordinary remedy of equitable subordination.
 
 I.
 
 8
 The Bankruptcy Code does not specify the circumstances under which equitable subordination may be imposed. Instead, 11 U.S.C. Sec. 510(c) provides:
 
 
 9
 Notwithstanding Secs. (a) and (b) of this section, after notice and a hearing, the court may--(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or (2) order that any lien securing such a subordinated claim be transferred to the estate.
 
 
 10
 The intent of Congress, in referring to "principles of equitable subordination," was to incorporate doctrines that had been well-developed in the courts for several decades preceding the enactment of the Bankruptcy Code. See S.Rep. No. 989, 95th Cong., 2d Sess., at 74 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The Fifth Circuit summarized the criteria for equitable subordination in In re: Mobile Steel Co., 563 F.2d 692, 703 (5th Cir.1977), as follows:
 
 
 11
 (1) whether the claimant engaged in fraudulent or inequitable conduct; (2) whether the conduct resulted in injury to creditors or gave an unfair advantage to the claimant; and (3) whether equitable subordination would be inconsistent with the bankruptcy law.
 
 
 12
 See also 3 L. King, Collier on Bankruptcy (MB) p 510.05 (15th ed. 1979).
 
 
 13
 Even if the Bank's actions could be imputed to the FDIC, we do not believe that the unusual remedy of equitable subordination is appropriate to the facts alleged by CTS. Mobile Steel's three-part test for equitable subordination is perhaps deceptively broad.[3] The courts have actually confined equitable subordination of claims to three general categories of cases: those in which a fiduciary of the debtor misuses his position to the disadvantage of other creditors;[4] those in which a third party, in effect, controls the debtor to the disadvantage of others;[5] and those in which a third-party defrauds other creditors.[6] See Collier on Bankruptcy p 510.05.
 
 
 14
 The cases cited by CTS actually demonstrate the limited circumstances in which equitable subordination has been ordered. In Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 2811, a corporation's controlling shareholder took a judgment against the corporation (debtor) with no intention of enforcing it, so that his interest would be secured over that of subsequent creditors. In Speco v. Valley State Bank, 36 B.R. 279 (D.S.D.1984), a bank fraudulently induced the holder of a valid mechanic's lien against the debtor into subordinating his claim to the bank's. Likewise, in In re Sterling House, Inc., 356 F.Supp. 1113 (W.D.Va.1973) the fiduciary (a director, officer, and substantial stockholder) of a severely undercapitalized corporation failed to properly record his claim against the corporation, thereby unfairly disadvantaging other creditors.
 
 
 15
 The allegations of CTS do not conform to any of the paradigmatic cases for equitable subordination. CTS contends that the Bank failed to fund the two promissory notes executed by the company and failed to extend further financing as it had orally agreed to do--conduct which CTS denounces as fraudulent and inequitable. CTS does not, however, allege that it or the Bank made any misrepresentations to third parties, such as creditors or suppliers, that additional financing was in place or that CTS was solvent when the opposite was true. The Bank was not a fiduciary of CTS, nor was it in a position of control over CTS. Compare, In re: American Lumber Co., 5 B.R. 470 (D.Minn.1980). Likewise, there are no representations that the Bank's collateral position improved because of CTS's actions in reliance upon the promise of further funding nor that the Bank knew or intended its collateral would be enhanced by CTS's additional purchases of equipment and supplies.
 
 
 16
 Although CTS likens its position to that of the undercapitalized debtor in Pepper v. Litton, supra, that case, and ones similar to it, displays a conscious plan by one in a fiduciary or control position to undercapitalize a debtor by substituting debt funding for risk capital to defeat the interests of junior creditors. See Pepper, supra; Matter of Multiponics, Inc., 622 F.2d 709; In re Trimble Co., 479 F.2d 103. Such a plan is completely absent from the case pleaded by CTS.
 
 II.
 
 17
 CTS's allegations demonstrate, if anything, challenges to the FDIC's claim based on defenses to its indebtedness to the Bank. These allegations suggest claims for fraud, bad faith, breach of a promise to extend financing and promissory estoppel. See, Fretz Construction Co. v. Southern National Bank of Houston, 626 S.W.2d 478 (Texas, 1981). See also Chatham Ventures, Inc. v. Federal Deposit Ins. Corp., 651 F.2d 355 (5th Cir., Unit B 1981). To the extent such allegations would justify disallowance or an offset against the Bank's secured claim under Texas law, they would prevent the assertion of a claim of equitable subordination. Mobile Steel, 563 F.2d 692, 701 (claims should be subordinated only to the extent necessary to offset the harm done by the inequitable conduct).
 
 
 18
 Of course, it is likely that CTS forebore to assert its defenses against its secured indebtedness to the Bank because it realized that the FDIC, as transferee of the notes and security agreements, would be shielded from such a reduction. To enable the FDIC to carry out its mandate to protect the solvency of the national banking system, Congress authorized the following protection when the FDIC acquires failed bank assets:No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.
 
 
 19
 12 U.S.C. Sec. 1823(e).
 
 
 20
 This FDIC "shield" statute squarely covers the allegations of CTS against the Bank in this case,[7] and thus forecloses CTS from asserting its particular alleged defenses against the FDIC. See Langley v. Federal Deposit Ins. Corp., 484 U.S. 86, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987); Chatham Ventures, 651 F.2d 355 (obligors under a note subsequently acquired by the FDIC challenged its right to collect on the note claiming that they were relieved of this obligation because the bank failed to advance them additional funds, thereby breaching a joint venture agreement. Our circuit held that "[t]he statutory protection of section 1823(e) shields the FDIC from defenses or claims raised with respect to 'any asset acquired by it under this section.' 12 U.S.C. Sec. 1823(e).").
 
 
 21
 We recently analyzed the statute's scope in applying its principles to a savings and loan liquidation conducted by FSLIC, and held that FSLIC enjoys the rights of a holder in due course of assets it receives from failed banks. See Federal Savings & Loan Ins. Corp. v. Murray, 853 F.2d 1251 (5th Cir.1988). As we noted in Murray, the FDIC should also enjoy this right. Murray, at 1256-57, citing Federal Deposit Ins. Corp. v. Cremona Co., 832 F.2d 959, 964 (6th Cir.1987), cert. dism'd sub nom. Gonda v. Federal Deposit Ins. Corp., --- U.S. ----, 108 S.Ct. 1494, 99 L.Ed.2d 879 (1988); Federal Deposit Ins. Corp. v. Wood, 758 F.2d 156 (6th Cir.), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); Gunter v. Hutcheson, 674 F.2d 862 (11th Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).[8] The significance of this statutory protection to the FDIC and its important mission has been confirmed repeatedly in court decisions denying various defenses against its claims to the assets of failed banks. See Wood, 758 F.2d 156, 160-61; Federal Deposit Ins. Corp. v. Gulf Life Ins. Co., 737 F.2d 1513, 1517 (11th Cir.1984); Gunter, 674 F.2d 862, 870. Consequently, even if principles of equitable subordination otherwise permitted the imputation of wrongful conduct to a transferee such as the FDIC, we would be constrained to hold that 12 U.S.C. Sec. 1823(e) forbids that result. As the foregoing analysis demonstrates, however, there is no such collision of principles.
 
 
 22
 Accordingly, the judgment of the district court affirming the bankruptcy court's rejection of equitable subordination and its allowance of the FDIC's secured claim against CTS, is AFFIRMED.
 
 
 
 [1]
 CTS was unable to provide copies of the notes at the hearing held on CTS's objection to the FDIC proof of claim. Mr. Bembinster, CTS's president, testified that the Bank never furnished him with a copy of the notes after he signed them, although the Bank had given him copies of other promissory notes on previous occasions. No representative of the Bank testified
 
 
 [2]
 D'Oench Duhme & Co., Inc. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942)
 
 
 [3]
 See DeNatale & Abram, The Doctrine of Equitable Subordination as Applied to Nonmanagement Creditors, 40 Bus.Law. 417, at 429 (1985) ("Indeed, only in a handful of cases have the courts seen fit to apply the doctrine [of equitable subordination].")
 
 
 [4]
 Matter of Multiponics, Inc., 622 F.2d 709 (5th Cir.1980); In re Trimble Co., 479 F.2d 103 (3rd Cir.1973)
 
 
 [5]
 Pepper v. Litton, 308 U.S. 238, 60 S.Ct. 238, 84 L.Ed. 281 (1939); In re American Lumber Co., 5 B.R. 470 (Bankr.D.Minn.1980) (bank having control over a debtor's operations had duty to deal fairly and impartially with debtor's unsecured creditors); In re T.E. Mercer Trucking Co., 16 B.R. 176 (N.D.Tex.1981) (third party controlled debtor by virtue of terms of loan and security agreements with debtor). Contra Krivo Indus. Supply Co. v. National Distillers & Chem. Corp., 483 F.2d 1098 (5th Cir.1973) (sufficient control not established)
 
 
 [6]
 In re Bowman Hardware & Electric Co., 67 F.2d 792 (7th Cir.1933) (creditor instructed debtor to conceal loan by not recording the indebtedness on debtor's books and financial statements); In re Just for the Fun of It of Tenn., Inc., 7 B.R. 166 (E.D.Tenn.1980) (claimant filed false notice of completion which led other creditors of debtor to act to their detriment)
 
 
 [7]
 Here, CTS alleges that it had an oral side agreement with the Bank to extend additional financing. No evidence of any written agreement to this effect has been offered. Furthermore, the record contains no evidence, nor does CTS allege, that this agreement was approved by the Bank's board of directors or its loan committee. Finally, there is no evidence in the record that this agreement was ever made an official record of the Bank
 
 
 [8]
 The FDIC shield statute codifies the holding of the Supreme Court in D'Oench Duhme & Co. Inc. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), which protected the FDIC from a claim that the parties had a secret agreement that the signed promissory note would not be enforced. The holding of D'Oench Duhme has been extended considerably by the courts in interpreting the plain meaning of 12 U.S.C. Sec. 1823(e). See Wood, 758 F.2d 156 (6th Cir.) cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); Gunter v. Hutcheson, 674 F.2d 862 (11th Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982)