**In re PERNIE BAILEY DRILLING COMPANY, INC., Debtor.**

**Hugh William THISTLETHWAITE, Jr., Trustee of Pernie Bailey Drilling Company, Inc., Plaintiff,**

**v.**

**FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver of First RepublicBank Houston N.A., Surviving Entity Following Merger with Interfirst Bank Fannin, Defendant.**

**Bankruptcy No. 486–00380–LO–7. Adv. No. 87–AV–50150.**

United States Bankruptcy Court, W.D. Louisiana, Lafayette–Opelousas Division.

Feb. 28, 1990.

Jack Caldwell, with Milling, Benson, Woodward, Hillyer, Pierson & Miller, Lafayette, La., for Trustee.

Robert Daniels, with Hirsch & Westheimer, Houston, Tex., for FDIC.

## MEMORANDUM OPINION

W. DONALD BOE, Jr., Bankruptcy Judge.

### I. *Background of FDIC's Motion For Summary Judgment*

On October 28, 1987, the Trustee for the bankruptcy estate of Pernie Bailey Drilling Company (hereinafter "Pernie Bailey" or "Debtor") filed a complaint commencing this adversary proceeding against the First RepublicBank Fannin, N.A. (hereinafter "First RepublicBank" or "the Bank"). Count I sets forth a claim under 11 U.S.C. Sec. 510(c) for equitable subordination of the bank's claim. Count II asserts that all collateral security agreements executed by Pernie Bailey in favor of First Republic-Bank are null and void because of the bank's coercive actions in obtaining the agreements. Count III alleges that the assignment by the Debtor to the bank of amounts owed to the Debtor by J.P. Owen and Company constitutes a fraudulent transfer under 11 U.S.C. Sec. 548. Count IV alleges, alternatively, that the assignment constitutes a preferential transfer under 11 U.S.C. Sec. 547. All of these counts are now challenged by a Motion for Summary Judgment filed by the Federal Deposit Insurance Corporation (hereinafter "the FDIC"). This Court denies summary judgment except as to Count I.

From 1981 to 1986, Interfirst Bank, N.A. and its successors made loans in excess of $10,000,000 to Pernie Bailey. On March 11, 1986, Pernie Bailey filed a petition under Chapter 11 of the Bankruptcy Code. In 1987, the holding company of Interfirst Bank entered into a merger with the holding company of First RepublicBank. Subsequently, on July 29, 1988, First Republic-Bank was declared insolvent by the Comptroller of Currency. The FDIC was appointed as receiver of the bank and was later substituted as the defendant in this adversary proceeding.

The FDIC's Motion for Summary Judgment contends that FDIC has no claim to subordinate, a contention with which this Court agrees. The Motion further contends that the Trustee's actions against the FDIC are barred by the Financial Institu-

tions Reform, Recovery, and Enforcement Act (FIRREA) and/or the federal policy protecting the FDIC as announced in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and expanded in later cases. The FDIC also asserts that the transfers cannot be avoided under Sec. 547 or 548 because it is a protected transferee under Sec. 550(b)(1).

## II. *The D'Oench Doctrine and the FDIC "Shield" Statute*

One of the primary functions of the FDIC is to pay depositors of a failed bank. *See, Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The FDIC is authorized by statute to act in two capacities: as receiver and in its corporate capacity. As receiver, it liquidates the assets of the failed bank and then pays depositors their insured amounts, covering any shortfall with insurance funds. Alternatively, the FDIC can enter a purchase and assumption transaction. In such a transaction, the FDIC acts in both capacities. As receiver, the FDIC arranges for another bank to purchase the failed bank, its assets of high banking quality, and its liabilities. Those assets not purchased are returned to the FDIC as receiver. The FDIC in its corporate capacity—as insurer—purchases the returned assets from the FDIC as receiver which in turn transfers the sum to the purchasing bank. The FDIC as insurer and owner of the assets, then attempts to collect thereon to reduce the loss to the insurance fund. *Id.*

The FDIC contends that there is a strong federal policy favoring protection of the FDIC in acquiring assets of a failed bank due to the important role of the FDIC in stabilizing and protecting the nation's banking system. This federal policy exists as is apparent from *D'Oench* and its progeny which interpret and expand the original decision. This federal policy also appears in the Federal Deposit Insurance Act, particularly Sec. 1823(e), and provisions of the recently enacted FIRREA, P.L. 101–73, 103 Stat. 183 (Aug. 9, 1989). The Trustee does not question the federal interest in protecting the FDIC, but strongly urges that

*D'Oench* decisions do not affect his federal statutory causes of action under the Bankruptcy Code. The Trustee stresses that nothing in the Bankruptcy Code (Title 11) or National Bank Act (Title 12) suggests that the FDIC should be treated differently from other creditors under the Bankruptcy Code, and that there is no basis to cut off the Trustee's right to avoid transfers merely because the FDIC took over the failed institution. The Trustee further argues that the public policy promoted by *D'Oench* and related federal statutes do not bar the Trustee's avoidance powers because these powers are created by federal statute and are not based on the secret side agreements or state law defenses which *D'Oench* and 12 U.S.C. Sec. 1823(c) have typically been interpreted to preclude.

*D'Oench* involved a suit by the FDIC against the maker of a demand note payable to a failed bank, which note the FDIC had acquired as part of the bank's collateral securing a loan. The maker of the note had sold the bank certain bonds which later defaulted. The note stated that it was given with the understanding that it would not be called for payment. The apparent reason for execution of the note was to allow the bank to carry notes and not show past-due bonds on its books. When sued by the FDIC, the maker asserted the defense of no consideration based on the "secret agreement" with the failed bank.

The Supreme Court found in federal legislation and common law sources a policy to protect the FDIC and the funds which it administers from misrepresentations concerning securities and other assets in bank portfolios. *D'Oench,* 315 U.S. at 456–459, 62 S.Ct. at 679–680. The Court concluded that the maker of the note was estopped from asserting a defense in which the maker lent himself to a scheme or arrangement whereby the banking authority on which the FDIC relied in insuring the bank was misled or was likely to be misled. The test was whether the note was designed to deceive the creditors of the bank or the public authority or would tend to have that effect. *Id.* at 460, 62 S.Ct. at 681. The maker of the note could not assert a "secret agreement" as a defense against the FDIC be-

cause the maker was responsible for the false status of the notes. *Id.* at 461, 62 S.Ct. at 681.

Since this landmark case in 1942, the courts have expanded the application and force of the *D'Oench* line of decisions. Additionally, Congress included a provision in the Federal Deposit Insurance Act of 1950 to enable the FDIC to better carry out its mandate to protect the solvency of the national banking system. 12 U.S.C. Sec. 1823(e) provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

One of the purposes of Sec. 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of a bank's assets. *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). Such evaluations are necessary when the FDIC is deciding whether to liquidate a failed bank or to enter a purchase and assumption transaction. The evaluation must be made with great speed, usually overnight, in order to preserve going concern value of the failed bank and to avoid interruption in banking services. Sec. 1823(e) also ensures mature consideration of unusual loan transactions by bank officials and prevents fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears destined for failure. *Id.*

Like Sec. 1823(e), the *D'Oench* doctrine has been used to promote stability of and

confidence in the FDIC. *D'Oench* protects the FDIC and the funds it administers against misrepresentations as to securities and other assets in the portfolios of the banks which it insures or to which it makes loans. *FSLIC v. Hsi*, 657 F.Supp. 1333 (E.D.La.1986). *D'Oench*, a rule of estoppel, prevents those who give notes to federally insured banks from raising defenses on alleged secret agreements with officers of the failed bank regarding enforceability of the notes by the FDIC. *D'Oench* appears to reach all those who lend themselves to a scheme or arrangements likely to mislead banking authorities.

At the time this adversary proceeding was commenced, the protections of 12 U.S.C. Sec. 1823(e) as interpreted by the 5th Circuit applied only to the FDIC in its corporate capacity. *See Beighley v. FDIC*, 868 F.2d 776 (5th Cir.1989). *But see, La-Mancha Aire, Inc. v. FDIC (In re LaMancha Aire, Inc.),* 41 B.R. 647, 649 (Bankr.S. D.Fla.1984). In this case, the FDIC is involved in its capacity as receiver because, although it did enter a purchase and assumption transaction, the assets at issue were purchased from the receiver by NCNB. The FDIC in its corporate capacity did not have to purchase the failed bank's notes and guarantees. The courts have used *D'Oench* to provide similar protection to the FDIC as receiver from secret side agreements between banks and borrowers. *See, Beighley, supra.* Now, FIRREA which was enacted on August 9, 1989, has amended Sec. 1823(e), and appears to include the FDIC as receiver within the protections from agreements not meeting the four requirements. Section 217 of FIRREA amends Sec. 1823(e) to read as follows:

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 11, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement

"(1) is in writing,

"(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

"(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

"(4) has been, continuously, from the time of its execution, an official record of the depository institution.";

FIRREA Sec. 212 also rewrites 12 U.S.C. Sec. 1821(d) to include a subsection which provides that any agreement not meeting the requirements set forth in Sec. 1823(e) shall not form the basis of, or substantially comprise, a claim against FDIC in its receiver or in its corporate capacity. These sections appear to clarify that Sec. 1823(e) invalidating certain secret agreements applies to the assets the FDIC acquires as receiver as well as to the assets it acquires in its corporate capacity. *See,* H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 322, at 332, 335 (1989) U.S.Code Cong. & Admin.News 1989, pp. 86, 118, 128, 131.

Before discussing the applicability of the *D'Oench* doctrine and federal statutes to each claim of the Trustee, this decision will summarize the major Supreme Court and 5th Circuit decisions relied on by the FDIC with the following caveats: only one of these decisions arises in a bankruptcy context and most involve the FDIC in its corporate rather than receiver capacity.

In *Langley v. FDIC, supra,* the Supreme Court reviewing a suit brought by FDIC in its corporate capacity interpreted Sec. 1823(e) to include as part of "agreement" a condition to payment of a note, such as the truth of an express warranty. In *Langley* the petitioner had borrowed money from a bank insured by the FDIC to finance the purchase of land. In consideration for the loan, the petitioners had executed a note, a Louisiana collateral mortgage, and personal guaranties. When sued on the note, the petitioners raised a defense of fraud in the inducement: that the bank had procured the note by misrepresentations overstating the amount of land and mineral acres in the tract and false statements that there were no outstanding mineral leases on the property.

The Court agreed with the FDIC that any such conditions would have to meet the requirements of Sec. 1823(e) in order to constitute a potential defense against the FDIC. Thus, the borrowers were not allowed to urge that the note was procured by the false misrepresentations of the bank not disclosed on bank records. The Court stated that one who signs a note subject to an unwritten condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of the performance of a counterpromise as in *D'Oench,* or of the truthfulness of a warranted fact. 108 S.Ct. at 402. The Court's decision was designed to ensure the FDIC's ability to rely on bank records at the time of an examination or acquisition, to assure prudent consideration of a loan before it is made by a bank, and to protect against collusive reconstruction of loan terms by bank officials and borrowers. 108 S.Ct. at 403.

In *Holt v. CTS Truss (In re CTS Truss),* 868 F.2d 146, 19 B.C.D. 391, 20 C.B.C.2d 1292 (5th Cir.1989), the FDIC invoked Sec. 1823(e) as a defense to a Chapter 11 debtor's claim for equitable subordination against FDIC acting in its corporate capacity. The Chapter 11 debtor argued that the FDIC's proof of claim should be subordinated to the claims of all other creditors under Sec. 510(c) of the Bankruptcy Code because of the failed bank's unkept promise to finance expansion of the debtor's business. No written loan documents memorialized this commitment. The bank's misrepresentations allegedly caused the debtor to become overextended, and eventually, bankrupt. When the bank itself was declared insolvent, the FDIC was appointed as receiver. The FDIC, in its corporate capacity, purchased from the FDIC, in its receiver capacity, certain assets including the notes and security documents executed by CTS Truss.

The Court found that the allegations of CTS, even if true, would not allow a finding that equitable subordination was appropriate: "The allegations of CTS do not conform to any of the paradigmatic cases for equitable subordination." 868 F.2d at 149. However, the Court went on to indicate that CTS's allegations suggested claims for fraud, bad faith, breach of promise, and promissory estoppel. The Court thought it likely that CTS forbore to assert such defenses against the indebtedness because it realized the FDIC as transferee would be shielded by Sec. 1823(e). The Court's comments, though possibly *dicta*, may suggest that it believed that an equitable subordination suit against the FDIC in its corporate capacity would not lie.

In *Beighley v. FDIC, supra,* borrowers sued the lending bank for breach of contract, common law and statutory fraud, breach of fiduciary duty, promissory estoppel, and breach of agency based on the bank's alleged breach of an agreement to finance the purchase of collateral relating to renewal notes issued by the borrowers. Two hours later, the bank was declared insolvent and was taken over by the FDIC as receiver. The FDIC counterclaimed to enforce the notes of the bank which it had purchased in its corporate capacity from the receiver. The borrower introduced into evidence numerous documents many of which were part of the bank's official records. However, not a single document stated that the bank agreed with the borrower to finance a buyer. The borrower's defenses simply did not meet the requirements of Sec. 1823(e) and so were barred as against the FDIC in its corporate capacity. The Court also held that the affirmative claims against the FDIC as receiver based on alleged breach of contract, breach of fiduciary duty, promissory estoppel, and fraud, were barred not by Sec. 1823(e) but by the common law *D'Oench* doctrine. The unwritten agreement upon which the borrowers relied was not in writing or clearly evidenced in the bank's records. Thus, the Court determined that the unwritten, unrecorded agreement was a secret side agreement invalidated by *D'Oench,* almost fifty years earlier.

In *FDIC v. McClanahan,* 795 F.2d 512 (5th Cir.1986), a maker signed a blank promissory note and delivered it to a former business colleague and bank owner whom he knew had been convicted of bank fraud. The Court held that the maker was estopped from asserting defenses of failure of consideration or fraud in the inducement against the FDIC as receiver after the note was filled in for $62,500. The Court based on the *D'Oench* doctrine found that the maker rather than the FDIC or innocent depositors or creditors of the bank must bear the consequences because the maker had lent himself to a scheme or arrangement by which the banking authority was or was likely to be misled. In reaching its decision, the Court noted that the literal language of the FDIC shield statute did not apply in this case where the FDIC was acting as receiver rather than in its corporate capacity.

In *FSLIC v. Murray,* 853 F.2d 1251 (5th Cir.1988), the Court found *D'Oench* applicable to the FSLIC which had acquired certain notes through a purchase and assumption agreement. The savings and loan had altered the notes without the makers' knowledge in an attempt to deceive federal regulatory authorities. The makers in a defense to payment on the notes urged that state law made fraudulent and material alteration of a note unenforceable except by a holder in due course. See La.R.S. 10:3–407. A holder in due course is one who takes an instrument for value in good faith and without knowledge of the defenses against it. U.C.C. Sec. 3–302(1); La.R.S. 10:3–302(1). The Court in *Murray* found that technically the FSLIC could not be a holder in due course because it had acquired the notes in bulk, through a purchase and assumption agreement, rather than in the ordinary course of business. U.C.C. Sec. 3–302(3)(c); La.R.S. 10:3–302(3)(c). The Court decided, however, that the FSLIC should nonetheless enjoy at least holder in due course status as a matter of federal common law when it acquires an instrument through a purchase and assumption agreement. The Court stated that most of the case law developed under

*D'Oench* "in effect" extended holder in due course status to federal banking regulators' purchase and assumption agreements. *Id.* at 1256. The Court was persuaded that providing the FSLIC with holder in due course status promotes necessary uniformity while countering the vagaries of individual state laws which could frustrate a basic FSLIC objective: confidence and stability in banking institutions. The Court on the equities believed that any maker of a note must anticipate that his note could be transferred to a holder in due course and that invalidation of the notes would give their makers a windfall by exonerating them from any liability for monies they had received. *Id.*

### III. *The Equitable Subordination Claim*

■ This Court will first address the FDIC's argument that the Trustee's claim for equitable subordination cannot, as a matter of law, be granted because the FDIC has not filed a proof of claim in the underlying bankruptcy case. When the FDIC was appointed receiver, it simultaneously executed a Purchase and Assumption Agreement with a bridge bank, NCNB Texas National Bank (NCNB). Pursuant to this agreement, the FDIC transferred to NCNB all of its right, title, and interest to Debtor's promissory notes and guarantees. Any claims of the original defendant, First RepublicBank, are now those of NCNB pursuant to the Purchase and Assumption Agreement. The issue then is whether an action for equitable subordination under 11 U.S.C. Sec. 510(c) can be asserted against one who has not actually asserted a claim against the debtor. This Court finds that it cannot.

The Complaint demands that the claims of First RepublicBank under 11 U.S.C. 510(c) be subordinated to all allowed claims of all of the Debtor's creditors. But NCNB, not the FDIC, has now asserted these claims in the underlying bankruptcy case.[1] The FDIC, at this time at least, has no allowed claim against the estate. The

Trustee concedes that a review of reported cases granting equitable subordination reveals that in every case an allowed claim or at least a claim of the subordinated party was involved. This Court concludes that, as a matter of law, there is no basis for equitable subordination because there is no claim to subordinate. If at some time in the future, it is shown that the FDIC does have an claim against the Debtor, the matter may be reconsidered. Likewise, if NCNB is hereafter made a defendant and it is determined that it has an allowed claim, then the Court will consider any claim for equitable subordination the Trustee may urge. Were this court to decide the effect of the *D'Oench* doctrine on the equitable subordination claim, it would be deciding an issue not in controversy.

The Court does note that although this Circuit dealt with a claim for equitable subordination against the FDIC in *CTS Truss, supra,* the alleged grounds for subordination were somewhat different than those in the instant case. In *CTS Truss,* the alleged wrongful conduct involved broken unwritten promises to make additional loans to finance a proposed expansion of the debtor's business. The Court found that the allegations suggested claims for fraud, bad faith, breach of a promise to extend financing and promissory estoppel. By contrast, the Trustee in this case does not base the claim for equitable subordination on misrepresentations by the bank, a situation which would more clearly fall within the realm of *Langley, supra.* Instead, the Trustee alleges coercion on the part of the bank, a fact situation not addressed in *D'Oench* or *Langley,* or at this time by the 5th Circuit.

### IV. *The Duress Claims*

■ The Trustee's Complaint alleges that coercive and inequitable conduct by First RepublicBank compelling the Debtor to execute various collateral security agreements renders such agreements null and void and requires that they be rescinded. However, the Trustee (without explanation)

---

1. In an earlier decision in this case, this Court found that NCNB did not timely file a proof of claim and that certain documents did not con-

stitute an informal proof of claim. *In re Pernie Bailey,* 105 B.R. 357 (Bankr.W.D.La.1989), *aff'd,* No. 89–1983 (W.D.La. Jan. 2, 1990).

has conceded that attacking the security instruments by extrinsic evidence of duress would contravene the *D'Oench* line of cases. Thus, the Trustee did not oppose summary judgment in favor of the FDIC on this issue. Nevertheless, the Court must decide whether summary judgment is appropriate, and concludes that there is an insufficient basis to find at this time that the FDIC, as a matter of law, is entitled to judgment.

The Complaint alleges that during the first half of 1984 the Bank used its position as the Debtor's principal creditor to compel the Debtor to grant the Bank security interests in virtually all of the company's assets, and thereafter to exercise financial, managerial, and operational control over the business. The Complaint further alleges that in May 1984 the Bank imposed various procedures which assured the bank total control of all cash received and disbursed by or for the account of Pernie Bailey. Subsequently, on May 30, 1984, the Bank allegedly called Pernie Bailey's note in the principal amount of $6,300,000 without warning, notice, or need. On June 1, 1984, the bank allegedly demanded that Pernie Bailey execute new collateral agreements on all or substantially all of the Debtor's assets not already encumbered in favor of the bank. When Pernie Bailey refused, the bank allegedly froze, offset, or otherwise denied the Debtor access to its operating account which put Pernie Bailey out of business. In face of this overwhelming coercion, Pernie Bailey executed the additional collateral agreements in favor of the bank. Based on these allegations, it is the Trustee's position that the security agreements are null and void and that the Debtor should recover all damages sustained as a result of the bank's coercive actions.

■ Duress has been defined as *unlawful* constraint. Black's Law Dictionary (5th ed. 1979). See also, Comment (b), La. Civil Code art. 1959; La.Civ.Code art. 1962. Whether the bank's actions constitute duress—for example—under article 1959, *et seq.*, has not been sufficiently briefed or argued by either party and would involve genuine issues of material fact not appropriate for summary judgment, unless all duress defenses are barred by the *D'Oench* doctrine.

The Trustee's position that challenging security instruments through extrinsic evidence of duress would contravene the *D'Oench* line of cases cannot be accepted uncritically. Some courts have concluded that Sec. 1823(e) does not bar a duress defense against FDIC in its corporate capacity. *See, FDIC v. Linn*, 671 F.Supp. 547 (N.D.Ill.1987). *Linn* stated that Sec. 1823(e) denies validity to certain unwritten agreements and does not bar extrinsic proof that a written document does not in fact reflect any valid written agreement. *Id.*, at 555 citing *FDIC v. Powers*, 576 F.Supp. 1167, 1170 (N.D.Ill.1983); *aff'd*, 753 F.2d 1076 (7th Cir.1984). *FDIC v. MM & S Partners*, 626 F.Supp. 681 (N.D.Ill.1985), concluded that Sec. 1823(e) bars only "secret agreement" defenses, not defenses like duress which challenge the underlying loan agreement's validity. *See, also, FDIC v. Balistreri*, 470 F.Supp. 752 (E.D.Wis. 1979).

In *FSLIC v. Ziegler*, 680 F.Supp. 235, 237–238 (E.D.La.1988), the FSLIC as receiver sued a borrower of a failed savings bank to collect the balance owed on a promissory note. The borrower asserted affirmative defenses including failure of consideration, breach of contract, and duress. The Court quickly dismissed the first two defenses as barred by *D'Oench*. However, without discussion, the Court did not apply the *D'Oench* doctrine to the duress defense but instead considered the defense on its merits, finding that duress did not exist under state law.

The same District Court was again faced with the effect of *D'Oench* on a duress defense in *FSLIC v. Doyle*, 1988 WL 59852, 1988 U.S.Dist.Lexis 5448 (E.D.La.1988). In *Doyle*, the defendants executed a note covering purchase of a Mercedes. When sued on the note by the FSLIC, the defendants claimed that they had been tricked and coerced into signing the note. In discussing the coercion defense, which was ultimately rejected, the Court noted that

*D'Oench* had not been read to mean that there can be no defenses at all against the FDIC (*id.*, citing *McClanahan, supra*), and stated that under some circumstances, coercion may be of such a degree as to remove a maker from the *D'Oench* bar. The District Court went on to hold that the degree of coercion alleged, involving threatened legal proceedings, did not avoid the reach of the doctrine.

Typically, the cases concluding that *D'Oench* or Sec. 1823(e) bars defenses involve breach of an agreement broadly interpreted to include a counterpromise as well as the truthfulness of a warranted fact. Duress may be considered an "outside" condition leading to the signing of a note, from which, by definition, the borrower cannot protect either himself or banking authorities. One who executes an instrument under duress may not have lent himself to a scheme or arrangement likely to mislead banking authorities. Moreover, while the FDIC at least in its corporate capacity has been afforded status equal to that of a holder in due course when it engages in a purchase and assumption agreement, duress that would render an obligation a nullity is a defense that can be successfully asserted even against a holder in due course. *See,* La.R.S. 10:3–305(2)(b). *See also, FDIC v. Turner,* 869 F.2d 270 (6th Cir.1989); *In re Hood,* 95 B.R. 696, 701–702 (Bankr.W.D.Mo.1989).

The duress defense is not barred as a matter of law when asserted against the FDIC either in its receiver or in its corporate capacity. The allegations in the Complaint lead this Court to believe that the possibility of a successful duress claim is remote. But this matter cannot be decided based upon the summary judgment pleadings, depositions and affidavits; it must await trial.

### V. *Fraudulent Conveyance and Preference Causes of Action*

■ The Trustee alleges that on February 5, 1986, Pernie Bailey assigned to First RepublicBank amounts that were owed to Pernie Bailey and its affiliate, Port Barre Tools, by J.P. Owen and Company (hereinafter "the J.P. Owen Credit"). Written assignments were executed by Mr. William Washburn as Chairman of Pernie Bailey and Port Barre Tools. The stated indebtedness from J.P. Owen to Port Barre Tools was declared to be not less than $887,-916.77. The stated indebtedness from J.P. Owen to Pernie Bailey was declared to be not less than $1,368,490.66. Each assignment stated consideration of "the sum of Ten Dollars (10.00) and other good and valuable consideration receipt and sufficiency of which are hereby acknowledged." The Trustee alleges that the bank did not apply the whole or any part of the J.P. Owen Credit toward the reduction of Pernie Bailey's indebtedness to the bank and that no other form of consideration was received for these assignments.

Accordingly, the Trustee claims to have a cause of action against the FDIC under Sec. 548(a)(2). Under Sec. 548(a)(2), the Trustee may avoid any transfer of an interest of the Debtor in property when:

1) the transfer was made within one year prior to the date of the filing of the petition, and

2) the Debtor received less than a reasonably equivalent value in exchange for such transfer, and

3) the Debtor was insolvent at the time of the transfer or became insolvent as a result thereof, or the Debtor was engaged in business for which any property remaining with the Debtor was an unreasonably small capital.

The FDIC contends that even if all these conditions exist, the Trustee cannot prevail because of FIRREA and/or the *D'Oench* doctrine. The Court disagrees.

Section 212 of FIRREA rewrites 12 U.S.C. Sec. 1821 governing the powers and duties of the FDIC as conservator and receiver. FIRREA adds a subsection which provides that any agreement which does not meet the requirements set forth in 12 U.S.C. Sec. 1823(e) shall not form the basis of, or substantially compromise, a claim against the receiver or the Corporation. Section 217 of FIRREA appears to amend Sec. 1823(e) to protect the FDIC in its

capacity as receiver from agreements not meeting the same requirements.

This Court has been unable to find and FDIC has not presented any cases applying Sec. 1823(e) or the *D'Oench* doctrine to bar a remedy or right provided by federal statute. The *D'Oench* doctrine and Sec. 1823(e) have been used to prohibit the assertion of defenses based on some separate secret agreement or condition when the FDIC seeks to enforce unconditional notes and guaranties. *Gallant v. Kanterman (In re Kanterman)*, 97 B.R. 768, 775 (Bankr.S.D.N.Y.1989), *aff'd*, 108 B.R. 432 (S.D.N.Y.1989). 12 U.S.C. Sec. 1821 has now also been amended by FIRREA to prevent a borrower from using such an agreement or condition as the basis of a claim against the FDIC. However the Trustee's avoiding powers in bankruptcy do not flow from an agreement or a condition to an agreement, but rather arise by operation of law based upon Bankruptcy Code provisions whose origins go back to the Statute of Fraudulent Conveyances, 13 Eliz. Ch. 5 (1570), designed to rectify fraud against creditors. *See, Kanterman, supra*, at 776–777; *First City Fin. Corp. v. FDIC (In re First City Fin. Corp.)*, 61 B.R. 95, 14 B.C.D. 586 (Bankr.D.N.M.1986); *LaMancha Aire, Inc. v. FDIC (In re LaMancha Aire, Inc.)*, 41 B.R. 647 (Bankr.S.D.Fla.1984).

In *McClanahan, supra*, the 5th Circuit extended *D'Oench* beyond arrangements judicially characterized as secret agreements. There, the Court expressly held that under *D'Oench* the defendant was estopped from asserting the bank's failure of consideration or fraud in the inducement. In deciding to deny such state law defenses, the Court was persuaded at least in part by the maker's recklessness in signing a note in blank, and delivering it to a bank official he knew had been convicted of bank fraud. Of the *D'Oench* cases relied on by the FDIC, *McClanahan* most closely resembles the case at bar because it involved a failure of consideration defense against the FDIC as receiver. It is also similar since the Trustee's fraudulent conveyance action alleges the assignments were made for less than a reasonable equivalent value,

*i.e.*, arguably a failure of consideration. Outside bankruptcy, *D'Oench* as interpreted in *McClanahan* might prevent the Trustee from asserting lack of consideration. This is particularly so because the assignments made by Pernie Bailey to the Bank acknowledge receipt of sufficient consideration, which is now alleged to have never been received, suggesting that Pernie Bailey may have negligently enabled the Bank in a fraudulent scheme.

However, the Trustee's avoiding powers under the Bankruptcy Code give the Trustee a federally created right to act on behalf of innocent creditors to avoid transfers whether otherwise valid or not if certain statutory conditions are met. The language of Sec. 1823(e) even if amended by FIRREA to protect the FDIC as receiver does not touch this right. This Court finds it inappropriate to stretch *D'Oench* beyond its present confines so that it would conflict with federal bankruptcy statutes. Neither the Bankruptcy Code (Title 11) nor the National Bank Act (Title 12) contains language suggesting that the FDIC should be treated differently than other entities under the Bankruptcy Code. *See, First City Fin. Corp.*, 61 B.R. at 96, 14 B.C.D. at 587. The FDIC is a body corporate with "the power ... to sue and be sued, to complain and defend in any court of law or equity." 12 U.S.C. Sec. 1819. The Bankruptcy Code grants avoiding powers to the Trustee. No exception is made for the FDIC. Federal common law, of which *D'Oench* is a part, is subject to the paramount authority of Congress. *See City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981). Neither *D'Oench* nor Sec. 1823(e) has been interpreted to afford the FDIC a defense to a federal claim against it. *See, In re LaMancha Aire, Inc., supra*, at 649. The policy to protect the FDIC from vagaries of state law affords no basis to exempt the FDIC from a federal statutory cause of action provided to assure equitable distribution of an insolvent debtor's assets to its creditors. *Id.* 12 U.S.C. Sec. 1823(e), even if amended by FIRREA to apply to the FDIC as receiver, is not applicable here because the Trustee is not attempting to use any agreement or condition

to an agreement against the FDIC. *See, First City Fin. Corp.,* 61 B.R. at 97, 14 B.C.D. at 587.

For the reasons given, this Court finds that neither the *D'Oench* doctrine nor Sec. 1823(e) and related provisions of FIRREA defeat the Trustee's claims under Sec. 548(a)(2). The Trustee's alternate fraudulent transfer claim under Sec. 548(a)(1) and the preference claim under Sec. 547 also remain viable. Sec. 548(a)(1) allows the Trustee to avoid a transfer made within the one year period if the debtor made the transfer with actual intent to hinder, delay, defraud any entity to which the debtor was or became indebted to after the date the transfer was made. Like Sec. 548(a)(2), Sec. 548(a)(1) does not involve any failure of consideration or other factor which courts have allowed the *D'Oench* doctrine to defeat. Similarly, Sec. 547 which allows the Trustee to avoid transfers made within a certain time period prior to bankruptcy does not fall within the realm of *D'Oench* or its counterparts. Apparently, all decisions that address the *D'Oench* doctrine and/or Sec. 1823(e) *vis-a-vis* the avoiding powers of the trustee in bankruptcy have reached similar results. *See, e.g. Kanterman, supra; First City Financial Corp., supra;* and *LaMancha Aire, Inc., supra.*

### VI. Is the FDIC a Protected Transferee Under Sec. 550(b)?

■ The FDIC argues that the Trustee cannot recover under Sec. 547 or Sec. 548, even if the Trustee's actions are not barred by *D'Oench* or Sec. 1823(e), because the FDIC is, as a matter of law, a protected transferee under Sec. 550(b). Bankruptcy Code Sec. 550(a) allows the Trustee to recover for the benefit of the estate, to the extent that a transfer is avoided under various Code sections, including Secs. 547 and 548, the property transferred or the value of such property. However, under Sec. 550(b)(1), the Trustee may not recover from a transferee that takes for value, in good faith, and without knowledge of the avoidability of the transfer avoided.

The FDIC relies heavily on a bankruptcy court decision in *Osherow v. First Republic Bank of San Antonio (In re Linen Warehouse),* 100 B.R. 856 (Bankr.W.D.Tex.

1989), which addressed the issue of whether the FDIC as receiver is shielded from fraudulent transfer liability by Sec. 550(b)(1). The Bankruptcy Court found that the FDIC was a good faith transferee based on the facts of the case, not as a matter of law.

*Linen Warehouse* first directed its attention to the threshhold issue of whether the appointment of the FDIC as receiver of the failed bank's assets was a transfer within the meaning of Sec. 550. The Court determined that based on the broad definition given "transfer" in Sec. 101(50) of the Bankruptcy Code and the relevant legislative history, the FDIC was a transferee under Sec. 101(50) and entitled to protection of Sec. 550(b) *if* it took for value, in good faith, and without knowledge of the avoidability of the transfer avoided. This Court agrees that the FDIC is a transferee in the case at bar, but it disagrees that the FDIC is a transferee for value.

"Transfer" is defined as every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property. The legislative history makes clear that even a change of possession, custody, or control is a transfer under this definition. H.R.Rep. No. 595, 95th Cong., 1st Sess. 314, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6271; S.Rep. No. 989, 95th Cong., 2d Sess. 27, reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5813. As receiver, the FDIC assumes or realizes all assets and liabilities of a failed bank and is responsible for winding up its affairs. 12 U.S.C. Sec. 1823(d); 12 U.S.C. Sec. 1813(j). In the case at bar, the FDIC sold, assigned, transferred, conveyed, and delivered to a bridge bank, NCNB, all rights, title, and interest of the receiver in and to various assets of the failed bank pursuant to the Purchase and Assumption Agreement between those parties. The failed bank parted with its assets and liabilities to give the FDIC the control, possession, and custody necessary to wind up the affairs of the bank, including the transferring of assets to another entity in exchange for that entity's assumption of certain liabilities. These actions fall well within the broad definition of transfer given by the Bankruptcy Code.

That a transfer existed in the present case is only the first step in determining whether the FDIC is a protected transferee under Sec. 550(b)(1). The transfer must have been for value, in good faith, and without knowledge of avoidability by the FDIC. The FDIC contends that these three elements exist as a matter of law, again relying on *Linen Warehouse, supra.*

*Linen Warehouse* in a *magister dixit* citing no authority stated that it is axiomatic that consideration can consist of either affirmative payment for services or the assumption of liabilities and concluded then that the FDIC's acceptance of the insolvent bank's assets and liabilities and the performance of duty under the banking insurance scheme constituted value under Sec. 550(b)(1) taking the form of benefit to depositors, creditors, and the community at large.

This Court respectfully disagrees with *Linen Warehouse*'s interpretation of value under Sec. 550(b)(1). Sec. 550(b)(1) requires a determination of what was given up by the transferee. *Bonded Financial Services v. European Am. Bank*, 838 F.2d 890, 897, 17 B.C.D. 299, 18 C.B.C.2d 155 (7th Cir.1988). *See also, Brown v. Harris (In re Auxano)*, 96 B.R. 957, 965 (Bankr.W. D.Mo.1989). The FDIC as receiver, quite unlike the FDIC in its corporate capacity when it enters a purchase and assumption agreement, does not give up anything. It does not pay for assets of the failed bank or assume any liabilities. This Court is unable to find that the FDIC as receiver takes for value under Sec. 550(b)(1). Moreover, to follow the transmogrified concept of value set forth in *Linen Warehouse* would visit the indiscretions of a failed bank upon creditors who already face losses from an entirely different failed entity. This result is very difficult to justify based on the equities or rational allocation of the risks of bank failure. This Court is unable to find that FDIC is a transferee for value in this case.

On the issues of knowledge and good faith, no court has found that these requirements of Sec. 550(b)(1) exist as a matter of law when the FDIC as receiver takes over the assets of a failed bank.

Even under *Linen Warehouse*, the issues of the FDIC's knowledge and good faith went to trial. This Court finds these issues of fact not appropriate for summary judgment in this case.

In summary, the FDIC is not transformed by law into a good faith transferee for value under Sec. 550(b)(1). The issues of value, good faith, and knowledge can only be determined after evidence adduced at trial. The FDIC's position on Sec. 550(b)(1) having failed, summary judgment cannot be granted in favor of the FDIC on the Trustee's fraudulent conveyance and preference claims.

### Conclusion

The policy behind the *D'Oench* doctrine and its statutory counterparts does not summarily defeat the Trustee's statutory rights under the Bankruptcy Code or his claim of duress. These matters will have to go to trial. The FDIC as receiver is not automatically a good faith transferee for value. In a separate Judgment signed today, Summary Judgment in favor of the FDIC will be DENIED as to all counts of the Trustee's Complaint except Count I relating to equitable subordination.