FRANK, Acting Chief Judge.
The questions of law we respond to in this matter arise from the demise of the Park Bank (the Bank) in Pinellas County and the assumption of its assets by the appellee, Federal Deposit Insurance Corporation (FDIC). The trial court granted the FDIC’s motion for a summary judgment and we affirm.
The setting leading to our conclusions may be summarized as follows:
On or about August 11, 1978, the appellant, Tierra Verde, entered into a contract for deed with Caru Corporation as the purchaser of the property that is the subject of this foreclosure action. Upon the completion of all payments due Tierra Verde, Caru was to receive the deed. On August 16, 1982, however, Caru filed a petition under Chapter 11 of the Bankruptcy Code in the United States District Court of the Middle District of Florida. At the moment of that event, Tierra Verde continued to hold its secured claim against the property. Tierra Verde, through its parent organization, Deltona, filed an adversary proceeding in the bankruptcy court in order to protect its secured status. To settle the controversy, Caru and Deltona (or Tierra Verde) entered into a joint motion seeking an order approving a settlement agreement. The settlement agreement was approved by the bankruptcy court on July 27, 1984. Pursuant to that document's provisions, Tierra Verde converted the contract of purchase to a mortgage and note, the terms of which were to be the same as the earlier Caru/Tierra Verde contract for deed. The contract for deed, however, is not to be found in the record before us. *765 Nonetheless, because of language alleged to be contained in that contract conferring a first mortgage standing upon Tierra Verde, it contends it has a first lien on the property.
On August 29, 1984, Caru filed a notice in the bankruptcy proceeding of its intention to sell the property to an attorney, W. Thompson Thorn, III, with a copy of the Thorn contract of sale attached to the notice. That contract called for the purchase to be subject to Tierra Verde’s mortgagee interest in the property. On August 28, 1984, it appears that Thorn obtained a loan commitment from the Bank to fund his purchase of the Caru property, and on December 21, 1984, he gave the Bank a note and mortgage on the property to secure the loan. He also executed a note and a mortgage on December 26, 1984, encumbering the property in favor of Tierra Verde. Thorn assumed the task of recording the Bank’s and Tierra Verde’s mortgages but he recorded his December 21 mortgage given to the Bank prior to recording the Tierra Verde mortgage.
Thorn defaulted in his mortgage obligation to the Bank. On February 13, 1985, the day prior to the FDIC’s takeover of the Bank, Thorn tendered a deed to the bank assertedly in lieu of foreclosure. That deed was not recorded and any understanding Thorn may have reached with the Bank in the nature of an accord, designed to forestall the foreclosure of his interest in the property and exonerating him from further liability under the note, was not memorialized.
Tierra Verde attempted to reopen the bankruptcy action. When that effort failed it responded to the FDIC complaint and pleaded in counter and cross claims that FDIC’s lien was subordinate to its position as mortgagee. Tierra Verde has grounded its claim to a status superior to that of the FDIC upon two considerations. Its first contention is bottomed upon the notion that Thorn’s deed in lieu of foreclosure vested full title to the property in the Bank, thus terminating Thorn’s indebtedness to the Bank, resulting in the Bank assuming the obligation to satisfy the Tierra Verde mortgage executed by Thorn. It next points to the settlement agreement approved by the bankruptcy court which it contends incorporated the provisions of the Caru/Tierra Verde contract for deed thus endowing the Tierra Verde mortgage stemming from the bankruptcy settlement agreement with a primary position. The record, as we noted above, does not contain the Caru/Tierra contract for deed, an instrument essential to Tierra Verde’s claim of equitable entitlement to a first mortgage position.
Turning to that aspect of this case which is central to Tierra Verde’s major position — Thorn’s deed to the Bank in lieu of foreclosure — we are persuaded beyond any doubt that whatever understanding Thorn and the Bank reached in that regard, if one was, indeed, reached, it cannot serve now to defeat the ability of the FDIC to foreclose the Thorn mortgage held by the Bank. In spite of Thorn’s deposition indicating that an officer of the Bank agreed to accept his deed in lieu of foreclosure, the record is barren of any independent evidence to support the Bank’s concurrence in that scheme.
“It has long been the law of Florida that it is essential to the validity of a deed of land that there be a voluntary delivery of it by the grantor to the grantee or to someone on his behalf, and an acceptance thereof by him with the mutual intention of the parties to pass title to the land.” (Emphasis added).
Jeffords v. Jeffords, 148 So.2d 43, 44 (Fla. 1st DCA 1962).
It is obvious at this point in our analysis that a question of fact emerges with respect to whether the Bank accepted the deed thus, but only for a moment, casting doubt upon the propriety of granting a summary judgment for the FDIC. Whittimore v. Cruce, 479 So.2d 761 (Fla. 1st DCA 1985). That doubt is eradicated by 12 U.S.C. § 1823(e), which provides that:
No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such *766 agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been continuously, from the time of its execution, an official record of the bank.
In our view Thorn’s testimony that there was an agreement with the Bank that it would accept the deed when he delivered it falls fully within the evil section 1823(e) was designed to prevent, i.e., oral agreements collateral to documented transactions which are part of a bank’s records relied upon by the FDIC in determining the failed bank’s assets. Langley v. Federal Deposit Insurance Corporation, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987); see Federal Savings and Loan Insurance Corporation v. Two Rivers Associates, Inc., 880 F.2d 1267 (11th Cir.1989). The record developed before the trial court does not reveal instruments satisfying the conjunctive requirements of section 1823(e) essential to insulating Tierra Verde from the effect of that statute. “Section 1823(e) absolutely precludes the assertion of defenses that do not meet its requirement.” Federal Deposit Insurance Corporation v. Morley, 867 F.2d 1381, 1391 (11th Cir.), cert. denied, — U.S. -, 110 S.Ct. 75, 107 L.Ed.2d 41 (1989). Indeed, even prior to the enactment of section 1823(e), the Supreme Court’s decision in D’Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), would bar Thorn’s putative oral agreement with the Bank as a defense to foreclosure of his mortgage. Beighley v. Federal Deposit Insurance Corporation, 868 F.2d 776 (5th Cir.1989). We have considered and reject Tierra Verde’s view that Langley is not applicable to this matter. Contrary to Tierra Verde’s belief, Langley is not confined to the circumstance where fraud is asserted against the FDIC by the original borrower, who in this matter would be Thorn. See Federal Savings and Loan Insurance Corporation v. Homes International Development Corporation, 721 F.Supp. 290 (S.D.Fla. 1989); Dasco, Inc. v. American City Bank and Trust Company, 429 F.Supp. 767 (D.Nev.1977). Thorn, most certainly, could not claim fraud against any party to this proceeding. On this state of. the record, Thorn owned the property and was in default of the paramount mortgage held by the Bank.*
The final element composing Tierra Verde’s attack upon the summary judgment again has its origin in the Caru/Tier-ra Verde settlement agreement approved by the bankruptcy court. Tierra Verde distills an equitable priority from that alleged agreement because of its adoption of the Caru/Tierra Verde contract for deed which, as we have observed, is not a part of the record. In any event, even if we were to assume that the Caru/Tierra Verde contract for deed, embodied by reference in the settlement agreement, conferred a first mortgage status upon Tierra Verde, the Bank was not a party to either the contract for deed or the settlement agreement. As equitable as Tierra Verde’s contention may appear in the light of Thorn’s conduct, we are not convinced that the primacy of the FDIC’s status must yield to equitable considerations. Tierra Verde has furnished us with general principles of Florida law associated with equitable liens but it has not, and nor has our independent research, revealed any authority permitting us to pierce the superior status conferred upon the FDIC by section 1823(e). We do not gainsay that legal doctrines found in state law are applicable to banking controversies arising prior to insolvency, Downriver Community Federal Credit Union v. Penn Square Bank through Federal De *767 posit Insurance Corporation, 879 F.2d 754 (10th Cir.1989), cert. denied, — U.S. -, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990), but “[a]s of the moment that a national bank is declared insolvent and goes into the hands of a receiver, federal law governs the distribution of the bank’s assets.” Id. at 759. Here, as occurred in Downriver, the equitable right may have existed prior to insolvency but after insolvency the federal law preempts incompatible state law principles. See also Matter of CTS Truss, Inc. v. Federal Deposit Insurance Corporation, 868 F.2d 146 (5th Cir.1989) (12 U.S.C. § 1823(e) forbids equitable subordination of the FDIC’s priority).
Affirmed.
HALL and PARKER, JJ., concur.

 In answering FDIC’s complaint, Thorn admitted that he owned the property. At his deposition, he attempted to retreat from that admission. We assess the pleadings as they exist in the record. Thus, Thorn’s pleaded concession that he owned the property undermines his testimonial claim that the Bank agreed to accept his deed in lieu of foreclosure.