**In re LINEN WAREHOUSE, INC., Debtor.**

**Randolph N. OSHEROW, Trustee, Plaintiff,**

v.

**FIRST REPUBLICBANK SAN ANTONIO, N.A., Northern Hills Banking Center, Defendant.**

**Bankruptcy No. 87–52064.
Adv. No. 88–5170.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

June 9, 1989.

Helen Gottlieb Schwartz, San Antonio, Tex., for plaintiff, Randolph N. Osherow, trustee.

Peter Gazda, San Antonio, Tex., for defendant, First RepublicBank San Antonio, N.A. Northern Hills Banking Center.

Keith Baker, San Antonio, Tex., for defendant, Federal Deposit Ins. Corp.

## OPINION

RONALD B. KING, Bankruptcy Judge.

The narrow and dispositive issue presented for decision in this adversary proceeding is whether the Federal Deposit Insurance Corporation, as receiver (the "FDIC"),[1] is shielded from liability for an alleged fraudulent transfer as a good faith transferee for value under section 550 of the Bankruptcy Code.[2] Under the facts in this case, it is the opinion of the Court that the FDIC is immune from liability as a good faith transferee for value.

RepublicBank Northern Hills, later known as First RepublicBank San Antonio, N.A., Northern Hills Banking Center (the

1. The FDIC can act in either its capacity as receiver or in its corporate capacity. This opinion refers to the FDIC in its capacity as receiver, unless otherwise noted. *See* 12 U.S.C. §§ 1819 & 1821(c) (1982 & Supp. IV 1986); and *Templin v. Weisgram,* 867 F.2d 240, 241 (5th Cir.1989).

2. 11 U.S.C. § 550 (1982 & Supp. IV 1986). Title 11 is generally referred to herein as the Bankruptcy Code.

"Bank"), originally made a loan to Linen Warehouse, Inc. (the "Debtor") secured by the inventory of the Debtor. Six months before the Debtor filed bankruptcy, its president contacted the Bank to inform the Bank that the Debtor would surrender the entire inventory to the Bank in partial satisfaction of the debt owed to the Bank. The Bank immediately took possession of the inventory and sold it within a few days to a buyer at a private sale for $57,500.00 cash. Six months later, the Debtor filed a Chapter 7 case and Randolph N. Osherow, the Chapter 7 trustee (the "Trustee") filed this adversary proceeding against the Bank to set aside the foreclosure as a fraudulent transfer or to recover the value of the inventory from the Bank. The foreclosure by the Bank is alleged to be a fraudulent transfer under section 548(a)(2) of the Bankruptcy Code as being for less than reasonably equivalent value at a time when the Debtor was insolvent.

The Bank was later closed by the Office of the Comptroller of the Currency and the FDIC was appointed as receiver on July 29, 1988. The FDIC immediately transferred most of the assets of the Bank to a bridge bank, which in turn conveyed certain assets to a successor bank. Since neither the bridge bank nor the successor bank assumed the potential liability to the Trustee in this adversary proceeding, any liability for the Trustee's claim remained with the FDIC, which was substituted as Defendant herein.

The FDIC claims immunity from liability under section 550(b) as a good faith transferee for value and without knowledge of the voidability of the transfer avoided. The FDIC alleges that it is shielded from liability under section 550(b) because all of the assets and liabilities of the Bank were transferred to the FDIC. The assets and liabilities transferred to the FDIC included both the $57,500.00 sale proceeds and the alleged liability to the Trustee for a voidable fraudulent transfer. The Trustee responds that the only transferees involved in this transaction were the Bank, which took possession of the inventory, and the actual purchaser of the linen inventory at the private foreclosure sale. The Trustee further contends that even if the FDIC is a transferee in this transaction, it did not take for value, in good faith and without knowledge of the voidability of the transfer sought to be avoided.

The undisputed evidence shows that the Debtor was in the throes of financial ruin and was insolvent at the time its president contacted the Bank in January, 1987 to surrender possession of the inventory which was security for the debt owing to the Bank. Within approximately four days, the Bank repossessed the collateral and sold the collateral at private sale to a buyer for $57,500.00. While the Debtor purported to waive notice of sale and the commercial reasonableness of the sale, the Trustee nonetheless has attacked the sale as a voidable fraudulent transfer under section 548 of the Bankruptcy Code. The Trustee alleges that the inventory was worth at least $150,000.00 to $200,000.00 at the time of the foreclosure sale by the Bank on February 4, 1987, and that the $57,500.00 foreclosure sale price was clearly not reasonably equivalent value under section 548(a)(2). *See Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1980). While the FDIC disputes the contention that the sale was for less than reasonably equivalent value under section 548, it also claims immunity as a good faith transferee for value under section 550 of the Bankruptcy Code. The resolution of that issue is dispositive in this adversary proceeding.

■ A threshold question is whether the appointment of the FDIC as receiver of the Bank is a "transfer" within the meaning of section 550 of the Bankruptcy Code. Undoubtedly, the Debtor's transfer of physical possession of the inventory to the Bank, as well as the Bank's transfer of the inventory at a foreclosure sale to a buyer, are both transfers contemplated by section 550 of the Bankruptcy Code. Whether the appointment of the FDIC as receiver of the failed bank is a "transfer" within the meaning of section 550 of the Bankruptcy Code, however, is less clear.

Section 101(50) of the Bankruptcy Code defines "transfer" as follows:

"[T]ransfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption....

The legislative history makes it clear that even a change of custody is a "transfer." As stated in the legislative history:

Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control are interests in property.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 314, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6271; S.Rep. No. 598, 95th Cong., 2d Sess. 27, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5813; *Holt v. Federal Deposit Insurance Corp.* (*In re Instrument Sales & Service, Inc.*), 99 B.R. 742 (Bankr.W.D.Tex.1987). The FDIC, therefore, is a transferee of the assets and liabilities of the Bank under section 101(50) of the Bankruptcy Code. As such, the FDIC is entitled to the protection of section 550(b) of the Bankruptcy Code in the event that it took for value, in good faith, and without knowledge of the voidability of the private foreclosure sale.

With respect to the first requirement of "value," it is the Trustee's position that the FDIC has not given any consideration that would constitute value under section 550(b). While the FDIC did not pay cash to the Bank in exchange for the assets and liabilities of the Bank, the FDIC involuntarily accepted the assets and liabilities of a failed insolvent institution pursuant to 12 U.S.C. § 1821(c) & (e) (1982 & Supp. IV 1986); *Gunter v. Hutcheson*, 674 F.2d 862, 865 n. 3 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). It

is axiomatic that consideration can consist of either affirmative payment, services or the assumption of liabilities. The FDIC is required by statute to marshal the assets of the failed bank and "pay to depositors and other creditors the net amounts available for distribution to them." 12 U.S.C. § 1821(d) (1982 & Supp. IV 1986). Further, there is an immediate benefit to the depositors, creditors, and the community at large by the FDIC's administration of the assets and liabilities of the Bank, and in this case, the continuation of banking services by the successor bank without interruption.[3] The FDIC gave value by accepting the assets and liabilities of a failed insolvent bank, and by performing the FDIC's attendant duties, in accordance with the statutory banking insurance scheme.

With respect to the second requirement of "good faith," there is no evidence to dispute the FDIC's position that it accepted the transfer of the Bank's assets and liabilities in good faith. In a slightly different context, the FDIC, in its *corporate* capacity, is presumed to be a good faith purchaser for value. *Federal Deposit Insurance Corp. v. Wood*, 758 F.2d 156, 160–161 (6th Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); *Gunter v. Hutcheson*, 674 F.2d 862, 873–874 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The Sixth Circuit has also held that the FDIC, dealing in its capacity as corporate insurer, acquires assets from the FDIC as receiver in good faith. *Gilman v. Federal Deposit Insurance Corp.*, 660 F.2d 688, 695 (6th Cir. 1981). Although no reported cases clearly address this issue as it relates to the FDIC, *as receiver*, the same reasoning should apply. The FDIC's representative testified at trial that the FDIC took the assets and liabilities of the Bank in good faith. There was no evidence to controvert this assertion, and, therefore, good faith is estab-

---

**3.** *See Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), which describes the FDIC's handling of a typical purchase and assumption scheme for a failed bank as follows:

[A] purchase and assumption must be consummated with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services.

lished.[4]

The final requirement of section 550(b) is that the FDIC must take without knowledge of the voidability of the transfer avoided. The Trustee asserts that the FDIC had actual knowledge, or at least constructive notice, because this adversary proceeding was on file and was presumably contained in the records of the Bank at the time the FDIC receivership was imposed on July 29, 1988. The FDIC's contention is that the mere fact that the adversary proceeding was on file or that it was contained within the records of the Bank does not prove actual knowledge of the voidability of the transfer. The FDIC, in its *corporate* capacity, has been previously held to have no knowledge of the voidability of a transfer when it did not have *actual* knowledge of the voidability of the transfer. *Langley v. Federal Deposit Insurance Corp.*, 484 U.S. 86, 108 S.Ct. 396, 400, 403, 98 L.Ed.2d 340 (1987) (knowledge not relevant if not in bank board or loan committee records); *Federal Deposit Insurance Corp. v. Wood*, 758 F.2d 156, 162 (6th Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); *Federal Deposit Insurance Corp. v. Ohlson*, 659 F.Supp. 490 (N.D.Iowa 1987). Although there are no cases directly holding that the FDIC, *as receiver*, must have actual knowledge, the same reasoning should again apply.

It also appears that the term "knowledge," as used in section 550(b), includes only *actual* knowledge. In *Smith v. Mixon (In re Mixon)*, 788 F.2d 229 (4th Cir. 1986), the trustee claimed that a party had constructive notice of a deed of trust, and therefore, took property with knowledge of the voidability of the transfer avoided under section 550(b)(1). In rejecting the contention that constructive notice would satisfy the knowledge requirement of section 550(b)(1), the court stated as follows:

> Although "knowledge" as used in § 550(b)(1) is not defined in the Code or the legislative history, we conclude that it does not mean "constructive notice." As several courts have noted when analyzing § 554 of the bankruptcy code, "[t]he term 'notice' may include either actual or constructive notice, while the term 'knowledge' includes only actual notice. That Congress selected the term 'knowledge' is significant" ... We believe that this reasoning applies with equal force to § 550(b)(1) of the Code. Therefore, Orie [the transferee] is entitled to the protection of § 550(b)(1) notwithstanding his constructive notice of the deed of trust.

788 F.2d at 232 (citations and footnotes omitted).

The FDIC representative testified at trial that the FDIC had no knowledge of the Trustee's claims at the time of the imposition of the receivership of the Bank. No evidence was offered to controvert that position. Under the reasoning of *Mixon*, it appears that the FDIC did not have actual knowledge of the voidability of the transfer sought to be avoided.

In conclusion, based on the evidence and case law, it is the opinion of this Court that the FDIC is shielded from liability under section 550 of the Bankruptcy Code because it is a transferee which took for value, in good faith, and without knowledge of the voidability of the transfer sought to be avoided. The disposition of this issue obviates the need to determine whether the transfer was voidable under section 548 of the Bankruptcy Code. This opinion shall constitute the findings of fact and conclusions of law of the Court pursuant to Bankruptcy Rule 7052. A judgment in favor of the FDIC that the Trustee take nothing will be rendered contemporaneously herewith.

---

**4.** *See Federal Deposit Ins. Corp. v. Wood*, 758 F.2d 156, 160 (6th Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985), which, in double negative fashion, states in dicta:

> When an insured bank goes into receivership, the FDIC in most cases will in fact be a good-faith holder of its notes. If the FDIC had no knowledge, prior to receivership, of defenses to the notes, and if it otherwise acted in good faith, it cannot be said that the FDIC is not innocent.