In re Michael Frank
GOODWIN, Debtor.

Robert P. MOSIER, Chapter 11
Trustee, Plaintiff,

v.

Frank GOODWIN, Merna Goodwin, William Seidel, Carol Seidel and Captain
William Seidel, Defendants.

Bankruptcy No. SA 86–06166 JR.
Adv. No. SA 88–0376 JR.

United States Bankruptcy Court,
C.D. California.

June 5, 1990.

Sebastian D'Amico, San Diego, Cal., for defendants.

Kirk S. Rense, Rosen, Wachtell & Gilbert, Irvine, Cal., for plaintiff.

JOHN E. RYAN, Bankruptcy Judge.

This proceeding involves Trustee's attempt to avoid the security interest of defendants in the estate's interest in JGA Group, a California partnership ("JGA"). I conducted a trial on Trustee's complaint on April 17, 1990. I took the matter under submission and asked for supplemental briefs on the § 550(b)(1) of the Bankruptcy Code issues.

### JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

### STATEMENT OF FACTS

The parties entered into a joint pretrial order admitting certain facts. Those facts are incorporated herein by reference. To summarize the admitted facts, Frank and Merna Goodwin are the parents of debtor. Captain William Seidel is the father of Diane Goodwin, debtor's spouse. William Seidel is the brother of Diane Goodwin and Carol Seidel is his wife.

Earlier in another proceeding, I determined that Diane Goodwin's interest in JGA and any proceeds from that interest were property of this estate. Diane Goodwin also had an interest in Desert Investors, a California partnership, that developed a real estate project called Palm Deserts. In May, 1988, she liquidated her interest in Desert Investors.

In May, 1987, William and Carol Seidel loaned Diane Goodwin $70,000 (the "May Loan"). To secure the May Loan, William and Carol Seidel received a security interest in Diane Goodwin's interest in Desert Investors. At the time of the loan, William Seidel was aware of debtor's financial difficulties. In addition, William Seidel had been told by Diane Goodwin that she and debtor had a prenuptial arrangement and that because of debtor's financial problems, the loan should be made to her rather than to Mike Goodwin.

In September, 1987, Diane Goodwin asked William Seidel if she could pay the May Loan in full and immediately reborrow the money. William Seidel agreed to this transaction. William and Carol Seidel needed the payment on the May Loan in order to have sufficient funds to make the new loan to Diane Goodwin (the "September Loan"). To secure the September Loan, William and Carol Seidel received a security interest in Diane Goodwin's interest in JGA.

Turning now to Captain Seidel, he received the following in payments from entities related to Diane Goodwin: (i) $25,000 from Wildwood Investments by check dated February 13, 1987; and (ii) $44,000 from Supercross, Inc. by check dated July 2, 1987. In October, 1987, Captain Seidel paid $40,000 to Diane Goodwin. He states that this was a loan to Diane Goodwin. To secure this loan, he received from Diane Goodwin a security interest in her interest

in JGA. Diane Goodwin ceased making interest payments on the loan after March, 1988.

In February, 1987, Frank and Merna Goodwin received $40,000 from Wildwood Investments. In July, 1987, they received $22,000 from Supercross, Inc. In October, 1987, Frank and Merna Goodwin paid Diane Goodwin $40,000. Shortly thereafter, Frank and Merna Goodwin paid an additional $12,000 to Diane Goodwin and Diane Goodwin signed a secured promissory note for $52,000 in favor of Frank and Merna Goodwin. This note was secured by her interest in JGA. In February, 1988, Diane Goodwin paid Frank and Merna Goodwin $12,000.

## DISCUSSION

Trustee brought causes of action under § 549 and § 550 of the Bankruptcy Code. Section 549 allows a trustee to avoid a transfer of property of the estate made after the commencement of the case which is not authorized under the Bankruptcy Code or by the court. Section 550 indicates that a trustee may recover for the benefit of the estate property that is transferred and avoidable under § 549 from "(1) the initial transferee of the transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." In oral argument and in Trustee's supplemental memorandum, Trustee agrees that defendants are not initial transferees under § 550(a)(1), but rather immediate or mediate transferees under § 550(a)(2). The distinction is important because there is an exception to the application of § 550(a)(2). Under § 550(b)(1) a trustee cannot recover property transferred to § 550(a)(2) recipients, or its value, if the transferee took for "value", "in good faith" and "without knowledge of the voidability of the transfer avoided."

There is no question that defendants took for value since they loaned Diane Goodwin funds and received in return security interests in JGA. The real issues are whether they took the security interests in JGA in good faith and without knowledge of the voidability of the transfer avoided.

■ The Bankruptcy Code does not define what "good faith" and "without knowledge of the voidability of the transfer avoided" mean. At the circuit level, there arguably is a split of authority on what knowledge is required. In *Smith v. Mixon, (In re Mixon)*, 788 F.2d 229 (4th Cir.1986), the court concluded that "knowledge" in § 550(b)(1) "does not mean 'constructive notice'". *Id.* at 232. In *Smith*, Clarence Mixon, the debtor, recorded a fraudulent deed of trust to secure a purported $70,000 debt owed to John Thomas. However, no debt existed. When Thomas encountered financial difficulties, Clarence had Thomas indicate that the note was satisfied. Clarence then transferred the encumbered property to his father, Orie. The transfer was made to satisfy past loans from Orie to Clarence. Orie did not search the title and did not know about the deed of trust in the name of Thomas. Shortly thereafter Thomas filed for bankruptcy and the bankruptcy judge held that Thomas' estate included the interest created by the fraudulent deed of trust. He also held that the release of the deed of trust to Clarence could be avoided. The judge, however, found that Orie had taken the property in good faith and for value. He also found that Orie did not know about Thomas' deed of trust or his financial difficulties at the time he acquired the property. *Id.* at 231. Because Orie lacked knowledge of the voidability of the release of the deed of trust, the bankruptcy judge held that the transfer to Orie could not be avoided because of § 550(b)(1). The district court reversed the bankruptcy court stating that although Orie lacked actual knowledge he had constructive notice because he acquired the property two days before the deed of trust was released. The Fourth Circuit Court of Appeals reversed the district court holding that Orie was entitled to the protection of § 550(b)(1) notwithstanding his constructive notice of the deed of trust.[1]

---

1. See also *In re Linen Warehouse, Inc.*, 100 B.R. 856 (Bankr.W.D.Tex.1989). In citing *Smith v.*

The Seventh Circuit in *Bonded Financial Services v. European Amer. Bank,* 838 F.2d 890 (7th Cir.1988), stated a different view regarding this issue of knowledge. It stated that "No one supposes that 'knowledge of voidability' means complete understanding of the facts and receipt of a lawyer's opinion that such a transfer is voidable; some lesser knowledge will do". *Id.* at 898. The Seventh Circuit imposes on the transferee a duty to investigate if there is sufficient information to put the transferee on notice that something is wrong. In other words, "[A] recipient that closes its eyes to the remaining facts may not deny knowledge." *Id.*

In *Bonded Financial Services,* the court found nothing in the record to suggest that the bank knew of debtor's precarious financial condition or the principal's plan to use debtor's money to pay his personal debts. The court also found that if inquiry had been made it would not have obtained facts to cause concern that a wrongdoing was being perpetrated.[2]

■ It is my view that the transferee must have knowledge of sufficient facts that (i) puts the transferee on notice that the transfer might be avoidable or (ii) requires further inquiry into the situation and such inquiry is likely to lead to the conclusion that the transfer might be avoidable. Applying this standard to William and Carol Seidel, let me review the facts. They knew that debtor was having financial difficulties. They also were asked to accept payment on the May Loan and immediately reloan the funds received to Diane and take new security for the February Loan. This should have caused William and Carol Seidel to question what was happening. They state that they were not concerned because they knew Diane and debtor had entered into a prenuptial agreement and were keeping their properties separate. On the other hand, it appears that Diane was rolling over the funds in order to substitute as security her interest in JGA in place of her interest in Desert Investors. She probably knew at the time that she was going to sell her interest in Desert Investors and that her brother William would not have any security for the May Loan unless she gave him different security. If William and Carol Seidel had inquired further of Diane, I am sure she would have told them that she was going to sell her interest in Desert Investors and, therefore, she needed to provide them with new security. I think this answer would have resolved any questions William and Carol had and they would not have taken the issue any further.

Section 550(b)(1) deals with subjective intent. William Seidel trusted his sister implicitly. He had no reason to disbelieve her. Further inquiry by William and Carol Seidel into the situation would not have uncovered the nature of the transfers between debtor and Diane Goodwin. It has been a difficult task for Trustee to trace and understand the various transactions between Diane, debtor and third parties that justified my finding that her interest in JGA was void and constituted an asset of the estate. I do not need to go into these transactions other than to comment that they were complicated and it is highly unlikely that any investigation by William and Carol would have uncovered sufficient information to put them on notice that the interest of Diane and JGA was subject to avoidance by Trustee.

As for the security interest of Captain Seidel in JGA in connection with his loan of $40,000 to Diane, he had no reason to question the validity of her interest. He did know that debtor was in financial difficulties, but this was not enough to put him on inquiry notice. He trusted Diane absolutely. He knew she had an antenuptial agreement and assumed her interest in JGA was her separate property. Even if he had inquired, I do not believe he would have

---

Mixon, (In re Mixon), the court states that "the term 'knowledge', as used in section 550(b), includes only actual knowledge." *Id.* at 860.

**2.** Additional cases supporting the inquiry notice view are: *In re Concord Senior Housing Founda-*

*tion,* 94 B.R. 180 (Bankr.C.D.Cal.1988); *In re Kanterman,* 97 B.R. 768 (Bankr.S.D.N.Y.1989); and *In re Auxano, Inc.,* 96 B.R. 957 (Bankr.W.D. Mo.1989).

obtained sufficient information to put him on notice that Trustee had cause to avoid Diane's interest in JGA.

Lastly, in reviewing the security interest in JGA taken by Merna and Frank Goodwin, I likewise conclude that they did not have sufficient information to satisfy the standard of knowledge regarding the avoidability of Diane's interest in JGA. Trustee points out that Frank and Merna Goodwin owe Diane Goodwin $40,000. This may act as a setoff, but not a basis to avoid the interest of Frank and Merna Goodwin in JGA that secures any balance owing to them on their loan to Diane.

As for the issue of good faith, the facts do not support a failure to satisfy this element by any of the defendants. The Bankruptcy Code does not define "good faith". To show a lack of good faith, Trustee must prove that defendants acted in bad faith. I do not see any evidence of bad faith on the part of defendants. They trusted Diane Goodwin. Frank and Merna Goodwin and Captain Seidel had made previous loans to her and had these loans repaid. They did not question her when she asked for the funds. To the contrary, they wanted to help her. They placed reliance on Diane rather than on any security provided in connection with the loans. Although William and Carol Seidel had not made previous loans to Diane, they likewise placed great trust in her and were not particularly concerned about the security provided for the loans. There is no evidence that they had any knowledge of any wrongdoing by Diane or debtor. These were simply family loans. Such loans are made all the time between family members without much fanfare, based on trust and given with love. I see nothing here that causes me to question defendants' honesty. I, therefore, cannot find that defendants acted in bad faith which is what I must find to hold for Trustee. Accordingly, I grant judgment for the defendants.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.