In re William Harvey STILL, Debtor.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of First State Bank of Abilene, Appellant,**

v.

**Stanley WRIGHT, Trustee, Appellee.**

No. 188–10285.
Adv. No. 189–1036.
Civ. A. No. CA–1–90–081–C.

United States District Court,
N.D. Texas,
Abilene Division.

Feb. 25, 1991.

Charles A. Beckham, Jr., Kemp, Smith, Duncan & Hammond, El Paso, Tex., for appellant.

Thomas M. Wheeler, Abilene, Tex., for appellee.

## MEMORANDUM OPINION AND ORDER

CUMMINGS, District Judge.

Before the Court is the appeal by the Federal Deposit Insurance Corporation, as Receiver (FDIC), of the judgment entered by the Honorable John C. Akard on May 25, 1990, which ordered the garnishment lien claimed by the FDIC against the assets of the Still bankruptcy estate be avoided and of no effect. *In re Still*, 113 B.R. 311 (Bankr.N.D.Tex.1990). This Court has jurisdiction over this appeal due to Bankruptcy Rule 8001 and pursuant to 28 U.S.C. § 158 (1988).

The FDIC claimed the following three errors were made by the bankruptcy court:

1. The bankruptcy court erred in determining that the FDIC was not a good-faith transferee for value and without knowledge of the voidability of the transfer to First State Bank of Abilene (FSB) pursuant to section 550(b) of the Bankruptcy Code;[1]

2. The bankruptcy court erred in determining the FDIC was not a transferee of FSB as defined by section 101(50) of the Bankruptcy Code;

3. The bankruptcy court erred in determining that the FDIC violated section 362 of the Bankruptcy Code by asserting the section 550(b) defense and allegedly "improving its position" over that of FSB.

### Standards of Review

Findings of fact by the bankruptcy court are subject to a "clearly erroneous" standard while conclusions of law are subject to *"de novo"* review. *See* Bankruptcy Rule 8013 and *Machinery Rental, Inc. v. Herpel (In re Multiponics, Inc.)*, 622 F.2d 709 (5th Cir.1980).

### Facts

The pertinent facts are as follows:

| | |
|---|---|
| 08/20/87 | FSB filed suit against Still (defendant and debtor). |
| 06/03/88 | FSB obtained judgment against Still. |
| 07/29/88 | FSB obtained writs of garnishment against defendant's obligors; answers were filed by those obligors. |
| 08/26/88 | Still filed Chapter 7. |
| 12/02/88 | FSB filed Proof of Claim, based on its 6/3/88 judgment and the garnishments. |
| 02/17/89 | FSB failed; FDIC appointed receiver. |
| 08/18/89 | Bankruptcy trustee (Trustee) objected to FSB's claim. |
| 08/23/89 | Trustee filed this adversary proceeding. |

In addition to the above, the bankruptcy court found that the parties agreed FSB's garnishments satisfied all the elements of a preferential transfer under section 547(b). 113 B.R. at 313. The issue before the bankruptcy court was whether the FDIC was entitled under section 550(b)(1) to prevent the Trustee from recovering the property transferred, i.e., the writs of garnishment. Transcript of Counsel's Argument (Argument) at 5–7, *Still* (No. 188–10285).

### Discussion

■ 11 U.S.C. § 550 states, in relevant part:

---

**1.** 11 U.S.C. §§ 101 *et seq.* (1988).

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 547 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred ... from—

(1) the initial transferee of such transfer ...; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided....

11 U.S.C. § 550 (1988).

The parties did not raise as issues any of the section 550(a) elements. The question is whether the FDIC satisfies all the requirements of section 550(b)(1).

### I. 11 U.S.C. § 550(b)

#### A. *Transferee*

The bankruptcy court, relying on 12 U.S.C. § 1821(c)(2)(A)(ii), (d)(2)(A)(i) (1988), found "there is no 'transfer' even within the broad definition of that term in § 101(50) of the Bankruptcy Code." 113 B.R. at 313.[2] The court also stated "it is well known that receivers are appointed by statute or by a court and clearly Congress could have included the acquisition of title by a receiver within the Bankruptcy Code definition of transfer if it had chosen to do so." *Id.*

The FDIC cited numerous bankruptcy court cases supporting its argument that FDIC is a transferee for purposes of section 101(50). Brief for Appellant, Federal Deposit Insurance Corporation as Receiver of First State Bank of Abilene (Appellant's Brief), at 14. *In re Pernie Bailey Drilling*

*Co.*, 111 B.R. 565 (Bankr.W.D.La.1990); *In re Linen Warehouse, Inc.*, 100 B.R. 856 (Bankr.W.D.Tex.1989); *In re Instrument Sales & Serv., Inc.*, 99 B.R. 742 (Bankr.W. D.Tex.1987); *In re Fidelity Elecs. Ltd.*, 52 B.R. 475 (Bankr.S.D.Fla.1985).

The Trustee cited three cases supporting the notion that FDIC as receiver "steps into the shoes" of the failed bank. Brief for Appellee, Stanley W. Wright, Trustee of the William Harvey Still Bankruptcy Estate (Appellee's Brief), at 2. None of the cases cited by the Trustee was from within the Fifth Circuit. *In re Robbins*, 91 B.R. 879 (Bankr.W.D.Mo.1988); *In re Hood*, 95 B.R. 696 (Bankr.W.D.Mo.1989); *In re Hescon Developers, Inc.*, 81 B.R. 26 (Bankr.S. D.Cal.1987).

Neither the court nor the FDIC cited 12 U.S.C. § 1821(d)(2)(G)(i)(II), which states "the [FDIC] may, as conservator or receiver ... *transfer any asset* or liability of the institution in default ... without any approval, assignment, or consent with respect to such transfer." *See* 12 U.S.C.A. § 1821 (West 1989). This provision does not preclude FDIC's transfer of any assets to itself.

The bankruptcy court's failure to consider the effect, if any, of 1821(d)(2)(G) on this issue appears to be an error of law. On the other hand, even if this court assumes that FDIC's acquisition was a "transfer" within the meaning of section 101(50) of the Bankruptcy Code, there appears to be no reason to reverse because of the other elements discussed in the remainder of this opinion.

#### B. *For Value*

Here, the FDIC raised the section 550(b) defense, and the Trustee argued in the bankruptcy court there was no value as a matter of law, citing *Pernie Bailey*.[3] In

---

**2.** The bankruptcy court cited 1821(c)(2)(A)(ii) as the authority for appointment of FDIC as conservator or receiver of a failed bank by the appropriate "federal banking agency." Subsection (c)(2) governs appointment of FDIC as receiver of *federal* depository institutions. First State Bank of Abilene was an insured *state* depository institution, which is governed by subsection (c)(3). In any event, the powers and duties of the FDIC as receiver under subsection

(d) are not affected by the fact of being a state depository institution or a federal depository institution. *See* 12 U.S.C.A. § 1821 (West 1989).

**3.** The bankruptcy court appeared to place on the FDIC the burden of proof on this issue. *Contra Belford v. Breck (In re Medical Cost Management, Inc.)*, 115 B.R. 406 (Bankr.D.Conn. 1990) (trustee has the burden of proving the transferee did not take the transfer for value, in

*Pernie Bailey,* the FDIC sought a summary judgment to defeat a bankruptcy trustee's adversary proceeding for recovery of alleged fraudulent or preferential transfers. The FDIC's primary argument was the *D'Oench, Duhme* doctrine. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). 12 U.S.C.A. § 1823(e) (West 1989). Alternatively, FDIC argued a section 550(b)(1) defense, contending the three elements existed as a matter of law, relying on *Linen Warehouse.* The *Pernie Bailey* court denied the summary judgment, stating "to follow the transmogrified concept of value set forth in *Linen Warehouse* would visit the indiscretions of a failed bank upon creditors who already face losses from an entirely different failed entity. This result is very difficult to justify based on the equities or rational allocation of the risks of bank failure." 111 B.R. at 576.

In the bankruptcy court, and in its brief before this court, the FDIC argued *Linen Warehouse* and that the "value" given by the FDIC is the acceptance by the FDIC of "all of the liability of the failed bank." Argument, at 9, and Appellant's Brief, at 15. Further, the FDIC argued that "upon appointment as receiver, the FDIC *shall* pay all valid obligations of the insured depository institution....," and that the FDIC "gives value ... in *assuming* the obligations of a failed financial institution." Appellant's Brief, at 15 [citing 12 U.S.C. § 1821(d)(2)(H)(1989)]. Finally, the FDIC cited *Linen Warehouse* and *Instrument Sales,* which, respectively, stand for the notions that the FDIC in its corporate capacity is presumed to be a good-faith pur-

chaser for value and that the FDIC was protected by § 550(b) when the trustee offered no evidence of absence of value. Appellant's Brief, at 16.

Section 1821 is entitled "Insurance Funds; Conservatorship and Receivership Powers of Corporation," and was substantially amended by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Public Law 101–73, Title II, §§ 201(a)(1), (b), 211–214, Title IX, § 909, 103 Stat. 187, 188, 218, 222, 243, 246, 477 (1989) [hereinafter FIRREA]. The pre-FIRREA 1821(d), entitled "Powers and Duties of Corporation as receiver," consisted of one paragraph. It stated, *inter alia,* that the FDIC "shall pay to itself ... such portion of the amounts realized [from the liquidation of a bank] *as it shall be entitled to receive on account of its subrogation* to the claims of depositors, and it shall pay to depositors and other creditors the net amounts *available for distribution* to them." 12 U.S.C. § 1821(d) (1988) (emphasis added).

The post-FIRREA subsection (d) encompasses sixteen paragraphs and numerous subparagraphs which specify the expanded powers and duties of the FDIC as receiver. Post–FIRREA 1821(d) states, *inter alia,* the FDIC "shall pay all valid obligations of the insured depository institution *in accordance with the prescriptions and limitations of this chapter." See* 12 U.S.C.A. § 1821(d)(2)(H) (West 1989) (emphasis added). This court is not aware of, and the FDIC did not cite to any, provisions in either the pre-FIRREA subsection (d) or the post-FIRREA subsection (d) which require, direct, or permit the FDIC to "as-

good faith, and without knowledge of the voidability of the transfer); *Sarasota Plaza Assocs. Ltd. Partnership v. Trupin (In re Sarasota Plaza Assocs. Ltd. Partnership),* 105 B.R. 109 (Bankr. M.D.Fla.1989) (the law requires that the debtor prove the defendant did not take the transfer for value, in good faith, or with knowledge of the voidability of the transfer); *compare Instrument Sales* (the FDIC is at least presumed to be a good-faith purchaser for value and without knowledge). The FDIC argued the trustee "bears the burden of establishing that the transferee is not a transferee protected by section 550." Appellant's Brief, at 13, citing *Medical Cost, In re Jorges Carpet Mills, Inc.,* 50 B.R. 84

(Bankr.M.D.Tenn.1985); *In re Farmers Mkt.,* 22 B.R. 71 (9th Cir.1982).

In all of the cited cases which ostensibly place the burden on the trustee, there already was evidence presented by the transferee on the 550(b) elements. Indeed, the *Medical Cost* court found there was evidence presented by the transferee on the section 550(b)(1) elements, while "the plaintiff has not offered a scintilla of evidence ..." and the plaintiff ignored completely the section 550(b) issue. While the FDIC did not raise "burden of proof" as an issue on appeal, this court believes the bankruptcy court properly placed the burden on the FDIC, based on the facts of this case.

sume" the obligations of a failed institution or to accept "all the liability of the failed bank."

The bankruptcy court stated "the FDIC as receiver ... does not give up anything. It does not pay for assets of a failed bank or assume any liabilities. [citing *Pernie Bailey*.]" 113 B.R. at 314. This court's review of both the pre-FIRREA 1821(d) and the post-FIRREA subsection (d) supports the bankruptcy court's finding in this regard as a matter of law, and to that extent this court disagrees with the *Linen Warehouse* court.

Finally, the bankruptcy court found that the FDIC did not "point to any value that it paid for FSB's assets." This finding of fact is not clearly erroneous.

## C. *Good Faith*

■ While the Bankruptcy Code does not define good faith, it has been construed to mean whether the transferee knew or should have known that the purpose of the trade was to defraud the debtor's creditors. *Id.* The bankruptcy court found the appointment of a receiver is not the type of transaction designed to defraud the debtor's creditors; therefore, the FDIC should be presumed to be in good faith. *Id.* The Trustee presented no evidence that the transfer here (that is, the transfer of the garnishment actions to FDIC as a result of the failure of FSB) was for the purpose of defrauding Still's creditors. Therefore, this court does not disturb the bankruptcy court's finding that the FDIC should be presumed to be in good faith.

## D. *Without Knowledge of the Voidability of the Transfer Avoided*

In the bankruptcy court, the FDIC asserted that it took the assets of FSB under a statutory duty and that it had no knowledge of anything concerning any of the assets until it actually took possession of them. *Id.* The bankruptcy court referred to this argument as the "blindfold" theory. *Id.* at n. 2.

The FDIC argued that the "knowledge" requirement of section 550(b) requires actual, as opposed to constructive, notice. Appellant's Brief, at 17. The FDIC relied

heavily on *In re Mixon*, 788 F.2d 229, 232 (4th Cir.1986).

*Mixon* was a fraudulent transfer case in Virginia. The bankruptcy court there held the trustee was not entitled to an interest in certain property transferred by the debtor. The *Mixon* court analyzed "knowledge" under 550(b)(1) by way of a review of three bankruptcy cases and one Third Circuit case which construed "knowledge" under section 544. Those cases stand for the notion that "knowledge" means actual notice, and that constructive or inquiry notice will not suffice. *See In re Richardson*, 23 B.R. 434 (Bankr.D.Utah 1982); *In re Euro–Swiss Int'l Corp.*, 33 B.R. 872 (Bankr.S.D.N.Y.1983); *In re Kelly*, 29 B.R. 708 (Bankr.D.Me.1983); and *McCannon v. Marston*, 679 F.2d 13 (3d Cir.1982).

All of those cases were fraudulent transfer cases in a bankruptcy context. Here there was no alleged fraudulent transfer. Moreover, the initial transfer here, in reality, was effected by the creditor (FSB), distinguished from transfers by the debtor in all the cited cases.

This court finds the facts in this case distinguishable from *Mixon* and cases cited therein. The issue of knowledge in the cited cases concerned the knowledge of the transferee that the transferor's (*i.e.* the debtor's in those cases) act in transferring was avoidable. Here, the *bank* (*i.e.*, the debtor's creditor) effected the initial transfer by way of judicial process, and the FDIC effected the subsequent transfer under statute.

The FDIC in its brief made a policy argument based on the *D'Oench, Duhme*/1823-(e) doctrine, but without citing either *D'Oench* or section 1823(e). Appellant's Brief, at 18–21. It is well settled that the *D'Oench, Duhme*/1823(e) doctrine was intended to avoid so-called secret agreements which are not documented anywhere in the bank's files, loan committee minutes, or board minutes. Here there was no secret agreement. In addition, the FDIC asserted it had no actual knowledge of the transfer even though the judgment and the writs of garnishment were reflected in the bank's

records, as well as in the bank's proof of claim filed in the debtor's bankruptcy, which itself was well documented in FSB's files. *Id.*[4]

The Trustee argued persuasively that "if the FDIC's position is correct, no preference action could ever be successfully brought against the FDIC. Appellee finds no statutory authority for excluding the FDIC from the Trustee's federally created avoidance powers." Appellee's Brief, at 6.

The bankruptcy court reasoned that, with regard to section 550(b), Congress had in mind a standard business transaction where a purchaser would make a reasonable inquiry before acquiring an asset, that such a purchaser would be on notice of the garnishment suits and of the bankruptcy filing because both were matters of public record, and that any prospective purchaser would review the bank's records which would reflect the existence of the garnishments and the bankruptcy. 113 B.R. at 314. Therefore, anyone purchasing such an asset (the claims in the garnishment proceedings, as well as the bank's claim in the bankruptcy estate) would be on notice and thus would be considered to have knowledge of the Trustee's avoiding powers. *Id.* In view of this, the bankruptcy court found the FDIC had such knowledge as a matter of law.

Finally, the FDIC's argument is tantamount to arguing it had no knowledge of the federal bankruptcy statutes, which include the trustee's avoidance powers. Clearly, that argument is untenable. As such, this court is unable to find that the bankruptcy court erred in finding the FDIC had knowledge of the avoidability of this transfer.

This court finds that the bankruptcy court's analysis is correct. In addition, it is worth noting that when Congress enacted FIRREA in 1989, it presumably was aware of the trustee's avoidance powers under the Bankruptcy Code. However, Congress did not provide in FIRREA any authority or power under which the FDIC might "trump" the bankruptcy trustee's avoidance powers.

## II. IMPROVEMENT OF POSITION

The Trustee argued that the FDIC's assertion of a 550(b) defense violates section 362 of the Bankruptcy Code. The FDIC argued that it cannot be a violation of the automatic stay to assert its rights and defenses under 550(b).

The bankruptcy court found that the Trustee's "literal reading of section 362 would make section 550(b) a nullity, but there is credence to the argument where the FDIC has knowledge of bankruptcy." 113 B.R. at 314. Of course, it might also be argued that "knowledge" of the bankruptcy equals knowledge of the avoidability of any transfer which occurred during the ninety days pre-petition, which appears to defeat the FDIC's 550(b) defense. Therefore, the FDIC's action here appears to violate 362 because attempting to enforce the garnishment lien against property of the estate in this case clearly would result in the FDIC enforcing a lien against property of the estate, if successful.

### *Conclusion*

The bankruptcy court's findings of fact were not clearly erroneous. Even if the bankruptcy court erred with regard to its "transferee" finding, this error would not affect the outcome here. The bankruptcy court did not commit reversible error in its conclusions of law. Therefore, the judgment of the bankruptcy court is AFFIRMED.

---

**4.** Taken to its extreme, the FDIC's position in this case appears to be as follows: even if FSB's board of directors had specifically authorized the garnishments, and they were reflected in the loan committee minutes, as well as the credit files, FDIC is protected because it could not know of all those notices until the bank actually failed because, before the bank failed, the FDIC had no obligation to review the bank records. As such, the FDIC's position is "heads, we win [under 1823(e)] because we could not have found the agreement in the records; tails, the trustee loses [under 550(b)] because there is no way for FDIC to have actual knowledge because we have no duty to look in the records to apprise ourselves of any notices."