United States Court of Appeals,

Fifth Circuit.

No. 91–1335.

In the Matter of William Harvey STILL, Debtor.

FEDERAL DEPOSIT INSURANCE CORPORATION, Successor in Interest to the First State Bank of Abilene, Appellant,

v.

Stanley W. WRIGHT, Trustee, Appellee.

June 17, 1992.

Appeal from the United States District Court For the Northern District of Texas.

Before THORNBERRY, GARWOOD, and DAVIS, Circuit Judges.


W. EUGENE DAVIS, Circuit Judge:

This case presents the narrow question of whether the FDIC–as–Receiver can use § 550(b)(1) of the Bankruptcy Code to defend against a trustee's avoidance of a preferential transfer. We hold that the FDIC is not entitled to the defense and therefore affirm the district court.


I.

In June 1988 the First State Bank of Abilene (Bank) obtained a judgment against William H. Still to enforce a guaranty. A month later, the Bank obtained writs of garnishments against Still's obligors. In August 1988, Still filed for bankruptcy under Chapter 7. The Bank timely filed a Proof of Claim of $308,334 in Still's bankruptcy proceeding. Then, in February 1989, the Bank failed, and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver.

Still's bankruptcy trustee (Trustee) avoided the writs of garnishment, now controlled by the FDIC, pursuant to § 547 of the Bankruptcy Code ("the Code"). The FDIC sought the defense of § 550(b)(1). The bankruptcy court held that the FDIC is not entitled to protection under § 550(b) and allowed the Trustee to avoid the garnishments. *In re Still,* 113 B.R. 311 (Bankr.N.D.Tex.1990). The

district court affirmed. 124 B.R. 24 (N.D.Tex.1991). The FDIC timely appealed to this court.

## II.

The issue of whether the FDIC–as–Receiver merits the protection of § 550(b) is one of first impression in this or any other Court of Appeals. Two bankruptcy courts within this circuit have addressed the issue and have reached opposite results. *Compare Osherow v. First RepublicBank San Antonio, N.A. (In re Linen Warehouse, Inc.),* 100 B.R. 856 (Bankr.W.D.Tex.1989) (FDIC satisfies requirements of § 550(b)), *with Thistlethwaite v. FDIC (In re Pernie Bailey Drilling Co.),* 111 B.R. 565 (Bankr.W.D.La.1990) (contra). We review de novo the district court's interpretation of the statute. *In re Missionary Baptist Found. of America, Inc.,* 712 F.2d 206, 209 (5th Cir.1983).

Section 547 of the Code grants trustees the power to avoid certain transfers of the debtor's property occurring within the 90 days preceding bankruptcy. The Trustee and the FDIC agree that the garnishments constitute preferential transfers under § 547. Section 550(a) specifies the persons from whom a trustee may recover a preferential transfer:

> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made;  or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a). If the FDIC is a "transferee" at all, it is a "mediate transferee" under § 550(a)(2) because it received the transfer from the Bank, the initial transferee, when the Bank went into receivership.

Section 550(b) places a limit on a trustee's ability to recover from subsequent transferees under subsection 550(a)(2). A trustee may not recover from

> (1) a [1] transferee that [2] takes for value, ... [3] in good faith, and [4] without knowledge of the voidability of the transfer avoided;  or

(2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550(b). Thus the FDIC must satisfy all four requirements of § 550(b)(1) to withstand the Trustee's avoidance power. We agree with the district and bankruptcy courts that the FDIC–as–Receiver does not qualify for § 550(b)(1) protection because it does not take "for value." Accordingly, we need not and do not decide whether the FDIC satisfies the other three requirements of § 550(b)(1).

The Bankruptcy Code does not define "value." It is undisputed that the FDIC did not pay any cash or other property to the Bank when it succeeded to the Bank's assets as receiver. The FDIC maintains, however, that it takes a failed bank's assets "for value" in two ways: by assuming a bank's liabilities, and by performing its statutory duties. We address these two arguments in turn.

The FDIC contends that it gives value by assuming a failed bank's liabilities. We agree that assumption of liabilities constitutes "value." We disagree, however, that the FDIC–as–Receiver actually assumes any liabilities. Ordinarily, a receiver

> stands in the place of the bank which he represents, and has only such rights as it had, so that the rights of third parties are not increased, diminished, or varied by his appointment. He takes charge of the banking affairs where the bank left them, and takes over its assets with its concomitant burdens. In other words, he takes only such title to the assets as the bank itself had, subject to all equities which existed against the assets in the hands of the bank.

W.M. Willson et al. eds., 3 *Michie on Banks and Banking,* Ch. 6, § 96 at 246–47 (Michie, 1974) (emphasis added). The FDIC, like any receiver, stands in the shoes of the failed bank, marshals the assets, and administers a fund. *See* 12 U.S.C. § 1821(d)(2)(B).[1] The FDIC–as–Receiver is required

---

[1]Section 1821(d)(2)(B) provides that:

> The [FDIC] may, as conservator or receiver—

> > (i) take over the assets of an operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;

> > (ii) collect all obligations and money due the institution;

to "pay all valid obligations of the insured depository institution in accordance with the prescriptions and limitations of this chapter." 12 U.S.C.A. § 1821(d)(2)(H) (West 1989). This is not the same as assuming a bank's obligations. One who "assumes" another's liabilities becomes personally liable on them. Henry Campbell Black, *Black's Law Dictionary* 113 (West, 5th ed. 1979). The FDIC–as–Receiver does not become personally liable on the Bank's obligations. Under the statute, the "receiver *may,* in the receiver's discretion *and to the extent funds are available,* pay creditor claims which are allowed by the receiver, approved by the [FDIC] ..., or determined by the final judgment of any court of competent jurisdiction...." 12 U.S.C.A. § 1821(d)(10)(A) (West 1989) (emphasis added). This is not a command to assume obligations.

The FDIC–as–Receiver also has the option of settling "all uninsured and unsecured claims on the receivership with a final settlement payment which shall constitute full payment and disposition of the [FDIC's] obligations to such claimants." 12 U.S.C.A. § 1821(d)(4)(B)(i) (West, Supp.1992). The "final payment" is determined by multiplying the amount of each claim by the "final settlement payment rate," which is the "percentage rate reflecting an average of the [FDIC's] receivership recovery experience" across all failed banks. Section 1821(d)(4)(B)(ii). Thus the FDIC is not personally liable on the Bank's liabilities, but is liable only to the extent that money is available in the fund. This is consonant with the ordinary responsibility of receivers. A receiver's official liability is the liability of the property in receivership, and this liability ends when the receivership terminates. Ralph Ewing Clark, 2 *A Treatise on the Law and Practice of Receivers,* Ch. 14, § 422 at 708 (W.H. Anderson, 3d ed. 1959). A receiver is personally liable only for a failure to exercise "ordinary care and prudence" in the performance of his or her duties. *Id.,* §§ 392(b) and (c) at 656. We therefore reject the FDIC's argument that it gives value as receiver by assuming a failed bank's liabilities.

---

(iii) perform all functions of the institution in the name of the institution which is consistent with the appointment as conservator or receiver;  and

(iv) preserve and conserve the assets and property of such institution.

The FDIC next suggests that it gives value as receiver by performing its statutory duties. The FDIC relies on *Linen Warehouse,* wherein the bankruptcy court held that the FDIC gives value by accepting the assets and liabilities and by continuing banking services without interruption. *Linen Warehouse,* 100 B.R. at 859. But such an interpretation reads the term "value" out of the statute. The banking system and the public receive the same benefit from the FDIC running a failed bank whether the FDIC gives "value" to the bank in exchange for the assets or simply receives the assets as a gift. Congress requires a subsequent transferee to "take[ ] for value" in order to merit protection under § 550(b). The FDIC would have us divorce the concept of value from the exchange of the Bank's assets. We do not think Congress intended the concept of "value" to be so attenuated. The FDIC does not "give value" to the Bank simply by performing its statutory duties.

The FDIC also contends that circuit precedent compels us to rule in its favor. The FDIC maintains that our holding in *Campbell Leasing, Inc. v. FDIC,* 901 F.2d 1244 (5th Cir.1990), was based on the premise that the FDIC–as–Receiver takes for value. We disagree. We held in *Campbell Leasing* that the FDIC–as–Receiver is entitled to the rights of a holder in due course regardless of whether it satisfies "the technical requirements of state law." *Id.* at 1249. Taking a negotiable instrument "for value" is one of the "technical requirements" that is not enforced. *Sunbelt Savings, FSB Dallas, Tex. v. Montross,* 923 F.2d 353, 355–56 (5th Cir.1991), *modified on other grounds, RTC v. Montross,* 944 F.2d 227 (5th Cir.1991) (en banc). Thus, far from holding that the FDIC is a holder in due course *because* it takes for value, *Campbell Leasing* was based on the *irrelevancy* of the value given. It is clear, then, that *Campbell Leasing* does not support the FDIC here.

Nor do the policy considerations underlying *Campbell Leasing* support the FDIC here. In *Campbell Leasing* and *Montross,* we declined to enforce such "technical requirements" as giving value because we recognized that the FDIC's vital role in the nation's banking system necessitated "some special protections to enable it to perform this function effectively." *Montross,* 923 F.2d at 356. But the FDIC's special role is not all-empowering. The FDIC comes to us today as one of Still's

many unsecured creditors. The instant dispute pits the FDIC–as–Receiver against the Trustee, who represents *all* of Still's unsecured creditors. The FDIC deserves no greater priority than these other creditors. Just as Congress has established the FDIC to protect the nation's banking system, so, too, has it established the Bankruptcy Code to allocate and adjust rights among a debtor's creditors. Congress certainly has the ability to grant the FDIC greater rights than other unsecured creditors. *See* Crime Control Act of 1990, Pub.L. No. 101–647, § 2528, 104 Stat. 4859, 4877–78, codified at 12 U.S.C.A. § 1821(d)(17)(D) (West, Supp.1992) (FDIC's right to pursue fraudulent transfers from its debtors is "superior to any rights of a trustee or any other party (other than any party which is a Federal agency) under [the Bankrupt cy Code]"). There is no indication, however, that Congress intended the FDIC to receive a similar priority here, and we decline to create one.

The FDIC has pointed us to no other statutory or judicial authority in support of its position, and we are unable to find any on our own. We hold, therefore, that the FDIC–as–Receiver has not satisfied the requirements of § 550(b)(1) because it did not take the Bank's assets for value.

## III.

Because of our disposition of the § 550(b)(1) issue, we need not reach the Trustee's alternative argument that the FDIC's assertion of the § 550(b) defense violates the automatic stay provision of § 362. Accordingly, the judgment of the district court is

AFFIRMED.